No. 31,803

Neva Anderson, *Appellee*, v. G. E. Anderson, *Appellant*.

(50 P. 2d 995)

Opinion filed November 9, 1935.

*Allen B. Burch, A. W. Geiger,* both of Wichita, *C. E. Vance, C. R. Hope, A. M. Fleming,* all of Garden City, and *A. B. Mitchell,* of Lawrence, for the appellant.

*R. D. Armstrong* and *Don B. Lang,* both of Scott City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to recover damages for injuries sustained when plaintiff was injured by the overturning of an automobile in which she was a passenger. Judgment was for plaintiff. Defendant appeals.

Since plaintiff was a passenger in the car and is suing the driver, the case comes under the provisions of R. S. 1933 Supp. 8-122b, commonly known as the automobile guest statute. In order for her to recover she must establish that the driver of the car was guilty of gross and wanton negligence.

The petition alleged that on the day in question defendant was driving a 1931 Buick sedan; that plaintiff was the daughter-in-law of defendant and had been invited by defendant to ride in the car, together with her husband and her husband's brother and the wife of defendant, from Scott City to Hutchinson; that on the left rear wheel of his car defendant had a worn-out balloon tire, and that this

tire was in such condition as to be highly dangerous to the safety of the driver and passengers in the car when it was operated at an excessive speed.

The petition further alleged that defendant was an experienced driver of automobiles; knew the defective condition of the tire in question, and on the morning of the accident had been expressly warned about the defective condition of the tire; that plaintiff was not an experienced driver and did not know about the condition of the tire.

The petition alleged that along the side of the road on which defendant was driving there was a ridge of gravel about twelve or eighteen inches high, and that it was necessary to the safety of occupants of the automobile that the driver exercise great care not to permit the car to run into this ridge of gravel, especially when the car was being operated at high speed. It was alleged that defendant gradually increased the speed of the car until it was going at a speed of between sixty-five and seventy miles per hour; that while it was being operated at that speed the left rear tire gave way, causing the car to swerve sharply, get out of defendant's control and finally turn over, throwing plaintiff out and injuring her.

The petition then alleged that defendant was guilty of gross and wanton negligence in that he knew about the unsafe condition of the tire; knew that by driving at a high rate of speed the likelihood that the tire would collapse would be greatly increased; knew that it would be dangerous to the occupants of the car to drive it against the ridge of gravel or to permit the car to get out of his control and swerve into this ridge of gravel; and that defendant well knew that if the tire in question should break down while the car was being operated at a high rate of speed the car would almost certainly get beyond his control and would almost certainly turn over and injure the occupants, and that knowing all these things defendant operated his car at a high rate of speed in gross and wanton disregard of the safety of plaintiff.

The answer was a general denial, and alleged that plaintiff's injuries were the result of her own negligence; that she assumed the risk incident to any defects in the car or tire, and that plaintiff was the daughter-in-law of defendant and a member of his household. At the close of plaintiff's case defendant demurred to her evidence.

The case was tried before a jury. The result was a verdict for

plaintiff. Special questions were answered by the jury. Defendant moved for judgment on the special questions notwithstanding the general verdict; to set aside certain answers; and for a new trial. These motions were all denied and judgment was entered for plaintiff. From this judgment defendant appeals.

R. S. 1933 Supp. 8-122b provides, in part, as follows:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payments for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

Under the provisions of that statute it was necessary that plaintiff show such conduct on the part of defendant as proved that he was willing to injure the passengers in the car, or that he was so indifferent to the consequences with a realization that the catastrophe was imminent as to amount to a willingness to injure. (See *Stout v. Gallemore,* 138 Kan. 385, 26 P. 2d 573.)

This subject was treated in *Sayre v. Malcom,* 139 Kan. 378, 31 P. 2d 8. There this court said:

"In *Stout v. Gallemore,* 138 Kan. 385, 26 P. 2d 573, it was held the statute above quoted relieves the operator of an automobile from liability to his guest resulting from negligence, as that term is distinguished from wantonness. Cases are there cited distinguishing wantonness, as the term was used, from negligence, and pointing out that conduct properly characterized under these terms differs not in degree, but in kind, the one denoting lack of due care under the circumstances, the other denoting conscious or intentional misconduct from which injury to someone is likely to result and with a reckless disregard of such consequence." (p. 379.)

The rule above laid down has been followed several times by this court. (See *Ewing v. Edwards,* 140 Kan. 325, 36 P. 2d 1021; also, *Aduddell v. Brighton,* 141 Kan. 617, 42 P. 2d 555.)

With this rule in view we will examine the record in this case. The defendant in his brief places the speed at sixty-five miles per hour. The wife in her testimony places it at seventy miles. For the purpose of this review we will take this to be about correct. The road was smooth except for a ridge of sand at the side. In the morning before the party left Scott City some of the men at the filling station noticed the tire on the left rear wheel needed some air. They had it filled. One of the boys in the car thought it should be changed, but defendant said they did not have time to wait. The tire had been used on the car for about seventeen thou-

sand miles, was weather checked, and showed a lot of wear. At that time there was an almost new tire being carried as a spare. The testimony of one of the boys in the car as to what actually happened at the scene of the wreck is as good as any. He testified as follows:

"As we drove down highway 96, father was driving the car and we were going a pretty good speed. I don't know at what speed we were driving, but all of a sudden the tire on my side went out and the car swerved to the left, which was the side I was sitting on, and my brother and his wife jammed over against me. Then the car swerved back the other way, and then it swerved the other way again and it kept this up. I don't know how many times, but several times, and then it just took one violent swerve sideways of the road and turned over."

After the accident it was noticed there was a nail in the new tire on the right rear wheel. Defendant tried to stop the car immediately after it started to swerve. The hired man checked the car over the day before the accident and put thirty-five pounds of air in each tire.

Defendant argues many questions. The first one we will discuss is the contention that as a matter of law the conduct of defendant did not constitute gross and wanton negligence, as defined by this court by the decisions already set out in this opinion. If this court should agree with defendant in this regard then the demurrer of defendant to the evidence of plaintiff should have been sustained.

The question may be briefly stated. Does driving at a speed of sixty-five miles an hour on a smooth road with a tire on a rear wheel which is somewhat worn constitute gross and wanton negligence?

There was nothing unusual about the scene of this wreck calculated to put a driver on his guard. In answering this question we must consider what we know about the manner in which drivers of automobiles conduct themselves. Our task is to ascertain what was in the mind of the driver. Wanton negligence requires as an element a mental attitude on the part of defendant of a will to injure, or such indifference to consequences, with realization that catastrophe is imminent, as to amount to willingness to injure. This distinguishes such conduct from negligence, which is merely failure to exercise due care.

The speed alone is not sufficient to place the conduct of defendant in such a classification. There are so many drivers on the highways to whom such a speed is not an unusual occurrence that to place

all of them in such a classification would force too many drivers off the road. When as many miles are driven at the rate of sixty-five miles per hour as is the case at the present time this court cannot say the legislature intended such speed alone should bring a driver within the meaning of the statute.

This court does not desire that this opinion should be construed as approving a speed such as that testified to here. It deems such a speed to be unwise and unnecessary. While a car is being driven at such a rate a collision, turn-over or sideswipe produces either a shattering stop or crashing change of direction; the occupants of the car continue in the old direction at the old speed; every surface and angle of the car's interior immediately becomes a battering, tearing projectile aimed squarely at the occupants of the car. This is as inescapable as doomsday and there is no bracing oneself against these imperative laws. (See Readers Digest for August, 1935, p. 23.)

Our problem, however, is to ascertain whether the defendant was guilty of gross and wanton negligence. We must measure his conduct by the standards of conduct commonly applied to mankind. When thus measured the conduct of defendant does not stand out— in this speed-maddened world bent on getting somewhere else as quickly as possible—but rather appears to be the usual course of conduct of his fellowmen, examples of which may be found on the highways on any hour's drive.

The car was loaded with close relatives of defendant and the record shows that the feeling toward all the members of the party was pleasant and agreeable.

In *Gamble v. Oil Co.*, 100 Kan. 74, 163 Pac. 627, this court gave some weight to such circumstances in connection with the question of whether a truck driver was guilty of wanton negligence. This court said:

"Again the relations between the driver and the plaintiff appear to have been good, as the plaintiff testified that the driver had always been kind to him, and we find nothing in the testimony indicating that the driver had other than the kindest of feelings toward the plaintiff and the boys of his acquaintance. We are of opinion that the evidence does not establish willful or wanton negligence on the part of the driver toward the plaintiff." (p. 82.)

We hold that such a circumstance should be considered along with the other circumstances of the occurrence. Certainly the evidence of such reckless disregard of consequences would have to be strong indeed to show such an attitude of defendant here toward his wife, his two sons and his daughter-in-law.

Something similar to what has been said must have been in the mind of the legislature. Prior to the session for 1925 the statutes of the state had fixed a definite speed limit of forty miles an hour. (See R. S. 8-122.) That section provided, in part, as follows:

"No person shall operate a motor vehicle on any highway outside of a city or village at a rate of speed greater than forty (40) miles per hour or greater than is reasonable and proper, having regard for the traffic and use of the road and the conditions of the road, nor at a rate of speed such as to endanger the life or limb of any person."

In 1925 the legislature amended this law, doing away with the definite speed limit. (See R. S. 1933 Supp. 8-122.) This action of the legislature shows an intention to do away with the question of speed alone in the attempt to solve the problem of negligent driving.

Was the condition of this tire on the left rear wheel such as to constitute gross and wanton negligence in driving the car at sixty-five miles an hour while using such a tire? To answer this question in the affirmative this court would be compelled to say that defendant knew or should have known that there was imminent danger that the tire would go down; and that there was imminent danger of which defendant was aware, or should have been aware, that when the tire did go down the car would swerve and get beyond the control of the driver. We cannot say such a thing.

As the tire is described in the record it cannot be said that it was at all certain it would go down. Here again we must look to the knowledge common to all mankind. It would be a harsh rule indeed that would place the stigma of wantonness on the driver of a car just because he did not foresee that a tire would go down. Indeed, in this case the record seems plain that a nail which could have caused the puncture was in the good tire, not the one that had needed air that morning. The bad tire was off the wheel immediately after the accident, but since the occupants of the car noticed only one tire down immediately before the accident it is a fair presumption that it was the good tire rather than the poor one that caused the wreck, and that the old tire was torn off the wheel when the car swerved, even though some witnesses testified that it was the left rear tire that they felt go down. This is important because it illustrates the unfairness of a rule that would declare that wantonness depended on the condition of the tires on a car. The demurrer of the defendant to the evidence of plaintiff should have been sustained.

There are many other errors urged by defendant, but in view of the conclusion that has been reached it will not be necessary to discuss them.

The judgment of the trial court is reversed with directions to enter judgment for the defendant.