784

## No. 32,656
CHARLES LOUIS COHEE, *Appellee*, v. E. W. HUTSON, *Appellant.*

(57 P. 2d 35)

Opinion filed May 9, 1936.

*LeRoy Bradfield,* of Neodesha, and *Stanley Garrity,* of Kansas City, Mo., for the appellant.

*W. H. Edmundson, Jerome Harman,* and *Charles Stephens,* all of Columbus, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for injuries sustained by plaintiff when defendant's truck capsized in the roadside ditch of a public highway.

The controlling facts were mainly these: Defendant was the owner of a farm truck equipped with a stock rack for hauling cattle. On November 3, 1932, he left his home near Neodesha to attend a cattle sale in Parsons. Plaintiff accompanied him as his guest. Defendant bought two head of cattle at the sale, loaded them on the truck, and about 6 o'clock p. m. the two men started for home.

About three miles from Neodesha they turned into a northbound road which at first had a slight rise and then went down a long gradual decline. The photographic exhibits attached to the abstract indicate that it was a typical country road. There was a ditch from one to four and one half feet deep on the east side of the road.

When the truck had passed the crown of the rise and was beginning to descend the long northward slope an automobile with very bright lights came from the north at high speed. Defendant's truck lights were comparatively dim. To avoid the likelihood of a collision defendant veered his truck northeastward, somewhat close

to the roadside ditch, put on his brakes and stopped. When the automobile had passed defendant discovered that the right front wheel of his truck was so close to the ditch that if he should release his brake and attempt to back his truck it would probably go forward into the ditch of its own momentum. So he said to plaintiff, "Get out and get a rock to chock it so I can release my brake to back out." Plaintiff did as requested. It was dark, but he found a rock about 6 or 8 inches long, 4 inches wide, and 4 inches thick. He placed this rock under the right front wheel. Plaintiff testified:

"Jake [defendant] hollered and asked me if I had it. I said, 'No; wait until I can get a larger rock.' I got hold of a larger rock and heard the gears or something and the next thing I knowed it was on top of me. At the time I got down in the ditch to pick up this first rock the truck was standing still. The first rock was put under the right front wheel nearest to the ditch edge.

. . . . . . . . . . . . . .

"Q. And [you] finally located a larger rock? A. I located a little larger one than I had.

"Q. Did you ever get it under the wheel? A. I did not.

. . . . . . . . . . . . . .

· "Q. Now, what happened then? A. As I started to turn with this rock I heard the gear or something—engine go in gear—and about that time it caught my leg and was on top of me.

. . . . . . . . . . . . . .

"The car started to move forwards and the first thing I knowed it was just on top of me, caught my leg and I grabbed the fender. The wheel caught my right leg between the knee and the ankle. As soon as it dropped on me and caught my leg here I grabbed the fender and went on down the ditch, and when it finally stopped it was away up here. I wouldn't say how far I hung on down the ditch. Finally, when the truck stopped on me, it turned over, leaning on me. It turned over on its right side."

Plaintiff was held fast between the truck and the ditch embankment for quite a while, but eventually a number of men came from a meeting in a schoolhouse half a mile away. They released plaintiff and he was taken to a hospital, where he was confined for several months. There was no issue raised as to the extent or gravity of his injuries.

In his action for damages plaintiff charged defendant with gross and wanton negligence. Defendant joined issues of fact. Counsel for both parties, and likewise the trial court, were agreed that the "guest statute" controlled, and the trial court so instructed the jury. A general verdict for $8,000 in favor of plaintiff was returned by the jury, which also answered certain special questions, viz:

"1. Was the defendant guilty of gross and wanton negligence? A. Yes.

"2. If you answer question No. 1 in the affirmative, then state specifically of what this gross and wanton negligence consisted? A. Attempting to shift gears without warning to Mr. Cohee.

. . . . . . . . . . . . . . .

"7. How far did the truck move northward with the two right wheels in the ditch along the east side of the road? A. About 10 feet.

"8. Did the defendant release the brakes and put the engine in reverse in an attempt to back up after Mr. Cohee left the cab of the truck and before the right front wheel came to rest on his body? A. Yes.

. . . . . . . . . . . . . .

"A. Did plaintiff place a rock under the front wheel of the truck soon after he got out of the truck? A. Yes.

"B. Was plaintiff turning with a second rock to place same under the front wheel of the truck just before the front wheel of the truck went against him? A. Yes.

"C. If you answer the above question 'Yes,' then state whether defendant, E. W. Hutson, knew or had good reasons for believing that plaintiff was making an effort to place a second rock under the front wheel of the truck. A. Good reasons to know.

"D. If you find that the defendant changed the gear just before the truck went into the ditch, then state whether defendant gave plaintiff any warning before changing the mechanism of his truck? A. No warning.

"E. If you answer 'D' that defendant did change the mechanism of his truck at said time, without previous notice to plaintiff, then state whether such change, without such notice, constituted reckless indifference for the rights of plaintiff? A. Yes."

Defendant filed all the usual motions. These were overruled; judgment was entered on the verdict, and defendant brings the case here for review.

The principal error assigned centers about the question whether the act of defendant in shifting gears without warning to plaintiff constituted gross and wanton negligence. Defendant maintains that it does not; plaintiff maintains the contrary.

It ought to be clear that the use of denunciatory adjectives in a pleading, an argument, or a jury's special verdict, is not of controlling importance. The jury's conception of those adjectives, "gross and wanton," is reflected in their second special finding—that it was an act of gross and wanton negligence for defendant to shift the gears of his truck without first warning the plaintiff.

To curb a practice which was bringing the administration of law and justice into disrepute—that of passenger guests suing their chauffeur hosts for damages sustained in motor-car accidents—our legislature in 1931 enacted the following statute:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle." (R. S. 1933 Supp. 8-122b.)

The meaning of this statute has been frequently considered and expounded in motor-car accident cases arising since the enactment. The most recent of these are: *Aduddell v. Brighton*, 141 Kan. 617, 42 P. 2d 555; *Murrell v. Janders*, 141 Kan. 906, 44 P. 2d 218; and *Anderson v. Anderson*, 142 Kan. 463, 50 P. 2d 995. In *Koster v. Matson*, 139 Kan. 124, 30 P. 2d 107, the action was by a guest against the driver of an automobile for injuries sustained in a motor-car accident in Nebraska. The pertinent Nebraska "guest" accident statute was substantially similar to our own. It was pointed out that wantonness is essentially different from negligence, not merely in degree but in kind of conduct.

"In this state, and apparently in Nebraska, reckless or wanton conduct differs not in degree but in kind from negligent conduct, and such a thing as wanton 'negligence' cannot exist. If the conduct be wanton it is not negligent. If it be negligent it is not wanton. Reckless or wanton conduct also differs from intentional conduct, because intent to injure is not present. However, in this state, for the practical purpose of an action for damages, recklessness or wantonness puts the wrongdoer in the same class with a willful wrongdoer. [Citing;] . . . *Railway Co. v. Lacy*, 78 Kan. 622, 629, 97 Pac. 1025." (p. 128.)

In *Stout v. Gallemore*, 138 Kan. 385, 26 P. 2d 573, the action was one to recover damages sustained in a motor-car accident. It was controlled by the guest statute, which was discussed in our opinion written by Mr. Justice Harvey. It was said:

"This statute is the outgrowth of a thought which had become common among our people, that it was too easy, under our law relating to liability for negligence, for one riding in an automobile as a guest of the driver to recover damages for injuries sustained in an automobile casualty. Similar statutes have been enacted in other states. Cases arising under such statutes are collected in the annotations in 74 A. L. R. 1198 and 86 A. L. R. 1145. . . .

"[In] our statute . . . the words 'gross and wanton negligence' finally chosen, were not especially well selected. For many years in the earlier history of our state our statutes and decisions recognized three degrees of negligence—slight, ordinary and gross. (*U. P. Rly. Co. v. Henry*, 36 Kan. 565, 569, 14 Pac. 1; *C. K. & W. Rld. Co. v. Fisher*, 49 Kan. 460, 30 Pac. 462.) This classification of negligence into degrees lacked a firm basis for its existence, for the injuries sustained by one injured by the negligence of another were not increased or diminished by the classification into degrees of the negligence

which caused the injuries. (*Kennedy v. Railway Co.,* 104 Kan. 129, 179 Pac. 314.) This classification caused much trouble to courts and litigants in attempting to apply their respective definitions to the facts of a particular case. Finally, in harmony with sounder reasoning and with the law of most other jurisdictions, the classification of negligence into degrees was taken out of the law of this state. (*Railway Co. v. Walters,* 78 Kan. 39, 96 Pac. 346.) Due care became and is the sole test, and the lack of due care is negligence. Due care in respect to specific circumstances is thought of as that care which an ordinarily careful, intelligent, prudent person should and would normally exercise under like circumstances. The failure to exercise such due care is negligence, which failure may arise from acts of commission or from omission. Negligence, properly speaking, does not include willful, intentional injury. Negligence resulting in injury gives rise to an action for damages. . . .

"Of those matters which give rise to a civil action for damages when an injury results therefrom, we recognize in our law negligence, meaning by that the lack of due care. We also have willful injury, as where one willfully strikes another, or willfully destroys property of another, or intentionally does any act with the purpose and intent of causing such injury. Among the activities of individuals are acts or omissions which give rise to civil actions for damages where injuries result therefrom, which are subject to more severe censure than negligence and yet which are something less than willful injury. The law applies to such acts the general term of wantonness. Wantonness is defined in 40 Cyc. 294 as—

"'Action without regard to the rights of others; a reckless disregard of the rights of others; reckless sport; willfully unrestrained action, running immoderately into excess; a licentious act by one man towards the person of another, without regard to his rights; a conscious failure to observe due care; a conscious invasion of the rights of another; an intentional doing of an unlawful act, knowing such act to have been unlawful; the conscious failure of one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.'" (pp. 389, 390.)

Tested by any of our decisions since the guest statute of 1931 was enacted, it seems clear that the shifting of the truck gears by defendant (finding 2) without warning to plaintiff (finding D.) when he had good reason to know that plaintiff was making an effort to place a second rock under the right front wheel (finding C) did not constitute wantonness, nor "gross and wanton negligence" as contemplated by the statute. It was by no means obvious that the truck would go forward after the first rock had been placed under the wheel, nor that the truck would capsize if it did go forward. Defendant's natural concern for his own safety, and for the safety of his own property, his truck, and his cattle, as well as all the other circumstances revealed by the record, precluded any assumption

that he shifted his truck gears with reckless unconcern whether plaintiff might be injured thereby. No semblance of wantonness appears either in the pertinent jury's special findings or in any evidence adduced upon which those findings could be supported. Finding No. 1 is a mere conclusion predicated on finding No. 2. The result is the judgment cannot stand.

The judgment is reversed with instructions to enter judgment for defendant.