MARGARET L. STEVERS, APPELLANT, v. RICHARD A. WALKER, RESPONDENT.—125 S. W. (2d) 920.

Kansas City Court of Appeals. January 30, 1939.

*Homer A. Cope, Cope & Hadsell* and *Walter A. Raymond* for appellant.

*J. Francis O'Sullivan* for respondent.

SHAIN, P. J.—This is an action to recover for personal injuries alleged to have been received by plaintiff in an automobile accident which occurred in Johnson County, Kansas, on the 20th day of

February, 1937, wherein plaintiff was a guest in defendant's car at the time.

Plaintiff in her petition states a cause of action based upon gross and wanton negligence of plaintiff in the operation of his car in which she was a guest. The statute of Kansas is plead and it stands admitted as the law of the case.

The plaintiff sets forth the guest law of the State of Kansas as follows:

"8-122b. Right of Guest to Collect Damages from Owner or Operator. That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payments for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

Trial was by jury and at the close of plaintiff's evidence the court gave a peremptory instruction in the nature of a demurrer to the evidence directing a verdict for defendant. Objection and exceptions were duly made and taken. Before said instruction was read to the jury plaintiff suffered and took an involuntary nonsuit with leave to set aside. A motion was duly filed by plaintiff to set aside the involuntary nonsuit and for cause to be reinstated. The plaintiff's motion to set aside was duly taken up and considered by the court and same was overruled. From the action of court overruling motion, plaintiff duly appealed.

In our opinion we will continue to refer to appellant as plaintiff and respondent as defendant.

## OPINION.

The questions for review in this cause involve claim of error in action of the trial court in giving the directed verdict for defendant and the action of court in refusing to set aside the involuntary nonsuit.

In determining the issues plaintiff is entitled to have considered the evidence alone that is most favorable to her. We consider that the plaintiff's own evidence is clear and cogent as to happening of events and plaintiff is entitled to every reasonable inference that can be drawn from same. In the direct testimony of plaintiff the record shows as follows:

"The car they rode in was a Pontiac Sedan. Before they went to the Walker home it had started storming. It was snowing but not sleeting. The wind was blowing quite hard. The storm had not abated to her knowledge when they left the Walker home, nor had it grown any worse. After leaving the Walker home, they drove over 75th Street to Highway 69, turned to the right, and drove north to 69th Street. When they reached the intersection of 75th

Street and U. S. Highway 69, the storm had not increased any to her knowledge. It was a cold evening and snowing at the time. They turned north on U. S. Highway 69 at its intersection with 75th Street. Mr. Walker drove on his side of the road. From the time they turned on U. S. Highway 69 at 75th Street until they approached the intersection of that highway with 69th Street, she stated:

"A. Yes sir, we kept remarking that he must take a great deal of caution due to the bad weather.

"Q. After those remarks were uttered was the speed slowed any? A. Yes, sir.

"Q. Did he at any time thereafter increase his speed regardless of the remarks? A. Off and on we would go a little faster and then slow down and go fast again and then slow down.

"Q. Who made those complaints in the automobile? A. Well, we were all—Mr. Stevers, Mrs. Walker and myself were all remarking to him to be careful on account of the bad weather.

"Q. What—strike it. You have in the past ridden in automobiles? A. Yes, sir.

"Q. You operated one yourself? A. Yes.

"Q. What would you say the average speed of the Walker car was from the time you hit Seventy-nine Highway at Seventy-fifth Street up to within 100 feet of Sixty-ninth Street? A. I would say we were going approximately twenty-five to thirty-five miles per hour.

"Q. Mrs. Stevers, had you ever before been to the Milburn Club? A. No, sir.

"Q. Did you know where it was located? A. Yes, sir.

"Q. Was there any suggestion on the part of the defendant Walker that you folks in the car should keep an eye open for a sign or something of that kind or character? A. Yes, sir.

"Q. As you traveled north, what, if anything, did you observe as you approached Sixty-ninth Street? A. Traffic—we were watching traffic very closely. We saw this car approaching us as we approached Sixty-ninth Street, and Mr. Walker slowed down, he made the remark then that we must watch for the sign which he wasn't quite sure where the entrance to Milburn was, and he told us to watch and we were all watching for this sign which would indicate the entrance to Milburn.

"Q. Where would you say the Walker car was in approximate number of feet from Sixty-ninth Street when this remark was made by Mr. Walker as to keeping a look-out for the sign? A. I would say about 100 feet.

"Q. About 100 feet. Now, tell the court and jury, after that remark was made if Mr. Walker continued to drive north on 69 Highway? A. Yes, sir.

640

"Q. And do you know where he was with reference to the approximate center of the highway? A. No, sir.

"Q. Would you say that at that time he was or was not on the right side of the road? A. He was on the right side of the road.

"Q. Who was it that first discovered that you were almost at Sixty-ninth Street where you should turn to the left? A. Mr. Stevers.

"Q. Did he make any remark calling that to Mr. Walker's attention? A. Yes. Then Mr. Walker made the remark that we must be getting close to it. Then Mr. Stevers spoke up and said 'There is the sign post' and Mr. Walker slowed down to, I would say right around eight or ten miles per hour.

"Q. And what was the speed of his automobile as he reached the intersection of Sixty-ninth Street with U. S. Highway 69, would you say? A. He was going at least eight miles an hour.

"Q. When you reached the intersection of Sixty-ninth Street did you observe any other automobile traffic on that highway? A. Yes, sir. We noticed when we got to Sixty-ninth Street this car that was coming directly toward us headlights were at least I would say, 150 to 200 feet from where we were.

"Q. Now, as the automobile in which you were riding—strike that. Did this car continue—did this car—what direction did this car travel in—this car that you saw the headlights on? A. It was coming south.

"Q. It was coming south. Would you say from your observation of the car for the first time that it was—what side of the road it was traveling on? A. On its own side of the road.

"Q. On its own side of the road? A. Yes, sir.

"Q. And after this was observed by you, this southbound automobile traveling on the west side of the highway, did Mr. Walker continue north into Sixty-ninth Street? A. He did.

"Q. And did you keep your eye on this other car? A. Yes, sir, I was watching it very closely, because I was afraid that something might happen. I had a premonition.

"Q. Did this car continue? A. Yes.

"Q. Did you at that time form any judgment as to the speed of that automobile? A. I would say it was going between thirty-five and forty miles an hour.

"Q. And where was this car—strike that. Did Mr. Walker thereafter make a turn to go to the left across the highway and west on Sixty-ninth Street? A. Yes, sir.

"Q. At the time that this turn was first started was Mr. Walker still on his side of the highway? A. Yes, sir.

"Q. Now, at the time this turn was first started and while Mr. Walker was on his side of the highway, what distance would you

say it was that this car was from the intersection of the highway and Sixty-ninth Street? A. Not over fifteen feet.

"Q. Was there any exclamation by you or anyone else in the car directed to Mr. Walker at that time? A. Yes, sir, I hollered at him, —in fact, his wife did too—that he could not make it. I hollered 'Dick, you can't make it; don't drive in front of that car.' He says 'I can make it.'

"Q. What did he say? A. He says 'I can make it,' and with that he deliberately turned and went into Sixty-ninth and the crash occurred.

"Q. Was that a sudden turn? A. I would say it was.

"Q. Would you say he increased the speed of his car as he made the turn? A. Yes.

"Q. Did he make the turn from his own side of the highway? A. Yes.

"Q. With the southbound automobile some 25 feet away?

"MR. O'SULLIVAN: Fifteen.

"THE WITNESS: Fifteen feet away.

"MR. O'SULLIVAN: Twelve to fifteen, she said.

"Q. (MR. COPE): Well, what did you say? A. Fifteen feet.

"Q. All right. Do you have any judgment, Mrs. Stevers—strike that. Had the Walker car in which you were riding ever been brought to a stop from the time you hit 69 Highway at Seventy-fifth Street until this collision occurred? A. Not to my knowledge.

"Q. What speed would you say the Walker car was making at the time the collision occurred? A. Well, I am no judge of that, but I do think he wasn't going over 5 to 8 miles an hour.

"MR. O'SULLIVAN: Five to eight?

"Q. (MR. COPE): What portion of the Walker car was struck? A. The back, the rear door, the running board, back fender. I don't recall if the front door was damaged or not. It was the back, rear.

"Q. Was the blow administered on the side that you were riding on, or the other side? A. The opposite side.

"Q. Well, what side would that be as it traveled west? A. The right side.

"Q. Right side, or side nearest the other automobile. Is that true? A. Yes.' "

The plaintiff's testimony was corroborated by her husband, John E. Stevers.

Mr. Leonard Bauer, the driver of the car that came into collision with defendant's car was called by plaintiff and questions and answers appear as follows:

"Q. (By MR. COPE): What do you mean? Just tell us what happened in your own language. Put it that way. A. We was driving south on the highway. There was an oncoming car driving north. And

about a short distance, about 15 feet from 69th Street I noticed that light coming right toward me, and it just happened in the nick of time—turned out squarely in front of me and I just smashed him.

"Q. Did you hear any horn sounded before that collision?

"MR. O'SULLIVAN: I object to that as being immaterial.

"THE COURT: Overruled.

"Q. (By MR. COPE): Did you, Leonard? A. What was that?

"Q. Did you hear any horn sounded on the other car? A. No, no warning whatever. .

"Q. Did you see any hand signal come out from the side of that car? A. No, sir.

"Q. Were you glancing to that side of the road as the car turned? A. No, sir.

"Q. What first attracted you attention that the car was turning to your side of the road? A. What attracted my attention, the car was first turning on my side, was the light coming toward me, because they came right out like that (illustrating).

"Q. Have you any judgment of the speed he was making as he cut across in front of you? A. I judge he was doing eight or ten miles.

"Q. And where would you say that the collision actually occurred with reference to the center line of 69 Highway? A. I would say about, according to my judgment, three or four feet west of the center strip on the highway.

"Q. And when you observed this car cut towards you, did you do anything yourself—as it cut in front of you? A. What do you mean by that? There are two ways to answer that.

"Q. When this car cut in front of you what did you do? Did you do anything about the brakes or turning or anything? A. Yes, I swerved to the left to avoid striking him.

"Q. Was there a collision? A. Yes, I smashed him.

"MR. COPE: He smashed him.

"A. I hit him."

We have set forth what we conclude presents most favorable testimony in plaintiff's behalf.

The question to be concluded by us in this review, is as to whether or not the acts of defendant constitute gross and wanton negligence in the light of the Kansas statute as interpreted by the Supreme Court of Kansas. We frequently have occasion to review guest law cases involving accidents in various States of the union. While these statutes have some dissimilarity in expression, still taken as a whole there is generally shown a similarity of purpose. However, there is a wide difference in the interpretation by the various courts of States having such statutes.

In giving interpretation to the laws of a sister State where plead, we follow the spirit of the "good faith and credit clause" and as a

privilege rather than as a right, we accept and are controlled in our review by the interpretation of the courts of the State wherein the matters being reviewed occurred. The very wording of the Kansas statutes, *supra,* appears to be that of exclusion rather than inclusion. From an examination of all Kansas cases cited, we conclude that the statute is so construed by the courts of that State.

It was stated in the oral argument in this case that insofar as the reports of that State were concerned no guest driver has ever been guilty of gross and wanton negligence by the courts of last resort in that State since the statute has been enacted. Whether or not such statement be literally correct we cannot say. However, after a somewhat diligent search we have found none. In the writer's former experience in reviewing guest laws we had given to the expression "gross, willful and wanton" a classification of a degree of negligence. Not so in Kansas. In Stout v. Gallemore, 138 Kans. 378, 31 Pac. (2d) 1021, the question of classification of the above expressions is extensively discussed and conclusions reached are as follows: "Finally, in harmony with sounder reasoning and with the law of most other jurisdictions, the classification of negligence into degrees was taken out of the law of this State."

In the above case it is further announced: "Negligence, properly speaking, does not include willful, intentional injury."

In Railway Co. v. Walters, 78 Kans. 39, the court says:

"Reckless disregard of security, wantonness or other equivalent of bad faith and the willful or malicious disposition to injure, all involve something else than negligence."

Characteristic of the courts of Kansas touching its guest law is that expressed by the court in Stout v. Gallemore, 138 Kans. l. c. 389.

"This statute is the outgrowth of a thought which had become common among our people; that it was too easy under our law relating to liability for negligence for one riding in an automobile as a guest of the driver to recover damages for injuries sustained in an automobile casualty."

The doctrine as laid down in Stout v. Gallemore, *supra,* seems to have been universally followed by the courts of Kansas. In the Stout case the opinion quotes with approval from Railway Co. v. Baker, 79 Kans. 183, l. c. 189, as follows:

"The duty there referred to, the disregard of which amounts to wantonness, is manifestly that which arises only when the person charged with dereliction had knowledge of the danger or of the facts which impute that knowledge to him. . . . Although what is really reckless and wanton misconduct is sometimes spoken of as gross negligence, the expression is everywhere recognized as inaccurate and unfortunate, because it seems to imply a difference only of a degree. . . . For the same reason the phrase 'reckless and wanton negligence' has a misleading tendency. One who is prop-

erly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence; his conduct must be such as to put him in the class with the willful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that instead of affirmatively wishing to injure another he is merely willing to do so: The differdence is that between him who casts a missle intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not.''

The courts of Kansas clearly hold that to characterize reckless and wanton misconduct as gross negligence is inaccurate and misleading in that it seems to imply a difference only of degree. Further, it is declared by the courts of Kansas that to be liable under the guest statute the driver must be put in the class of a willful doer of wrong. [Aduddell v. Brighton, 141 Kans. 6; Railway Co. v. Baker, 79 Kans. 183.]

The guest law of Kansas, as interpreted by the courts of Kansas, has a salutary purpose of relieving the driver from the consequence of mere negligence rather than an *impetus* to the guest to sue for damages. It follows that the courts of that State have established the rule that the facts must show that the driver was so willing to injure, or acted with such reckless disregard with realization of known imminent danger as amounted to willingness to injure. In other words, he must act so as to place himself in the class of a willful doer of wrong. [Anderson v. Anderson, 142 Kans. 463; Cohee v. Hutson, 143 Kans. 784.]

The evidence in this case discloses that the families of plaintiff and defendant were at least friends who occasionally visited. On the evening of the accident, which is shown to have been a somewhat stormy one, the plaintiff and her husband came to the home of defendant on defendant's invitation and after a friendly visit started (about 9:30 P. M.) to go in defendant's car, which was being driven by defendant, to what is known as Milburn Country Club. We can but infer that the trip was a friendly jaunt with recreation in view.

We have set forth in detail the plaintiff's own evidence of facts occurring in approaching and at the scene of the accident. Viewing the evidence in its most favorable light to plaintiff, we conclude that the evidence falls far short of proving that the defendant was either willing that plaintiff's damage should occur or that he acted with such reckless disregard of consequences, with a realization that danger was imminent, as amounts to a willingness on his part to injure plaintiff. The affair was unfortunate. However, the facts do not show the defendant guilty of such gross and wanton acts, as these terms are interpreted by the Supreme Court of Kansas, as to justify a recovery by plaintiff under the guest law of that State.

We find no error in the action of the circuit court giving an instructed verdict for defendant and in refusing to set aside the involuntary nonsuit.

Judgment affirmed. All concur.