BEULAH TILLMAN, Appellant, v. GLENN ZUMWALT, Respondent, No. 42419—250 S. W. (2d) 142.

Court en Banc, June 9, 1952.

Rehearing Denied, July 14, 1952.

168

*Burden & Shortridge* for appellant.

*Ralph E. Baird* and *Cowgill Blair, Jr.,* for respondent.

170

**ELLISON, C. J.**—The plaintiff-appellant Beulah Tillman sued the defendant-respondent Zumwalt in the circuit court of Jasper County for $50,000 damages for injuries sustained in Kansas while riding as a guest in respondent's automobile when it overturned on U. S. Highway 166 about 3½ miles east of Baxter Springs. Respondent defended on the ground that he was not guilty of *gross and* [143] *wanton* negligence, as required by the Kansas "guest statute", Sec. 8-122b, Gen. Stat. Ks. 1949, or that if he was the appellant was guilty of contributory negligence. The Missouri trial court endeavoring to conform to the Kansas law, sustained the defendant's motion for a directed verdict at the close of the plaintiff's case and entered judgment accordingly.

The plaintiff appealed and on submission of the cause in Division I of this court two of the judges concurred in an affirmance of that judgment and two dissented. There being no majority vote either way, the cause was ordered transferred to the court en banc. The sole question here is whether the trial court ruled correctly in sustaining the defendant-respondent's demurrer to the evidence. The issue as to his liability, must rest on the merits—the facts and the proper construction of the Kansas statute.

The casualty occurred on February 15, 1948, about 10:30 p.m. The highway was a black top road 24 feet wide. The weather was clear and the road dry, running somewhat upgrade toward the east, in which direction the automobile was traveling. It had hard clay, gravel and soil shoulders with no marked center line. No other vehicles were near or involved in the casualty. There was no defect in respondent's automobile, which was comparatively new. According to appellant's testimony, after the automobile had crossed a highway bridge at the east edge of Baxter Springs it started weaving at high speed and diverging from the eastbound driver's right or south side of the road. Appellant noticed the speedometer showed a speed of over 70 miles per hour. In a deposition she had said 73 miles. It increased speed while it was swerving and appellant was thrown around in the car. That was all she remembered until she "came to" outside the car on

the ground. Appellant further stated she had protested several times, asking respondent to slow down, and told him if he wouldn't she wanted to get out or be taken back to Baxter Springs. She thought respondent was angry at her because he wouldn't answer her protests. On this return trip he didn't say a word to her.

Two members of the Kansas State Highway Patrol, Trooper Williams and Captain Monahan testified they visited early the next morning the place where the casualty had occurred. They examined the black top pavement and road shoulders for skid marks and the dirt shoulders for gouged out places. From the deep wheel tracks they found a motor vehicle had run from the paved portion and traveled a distance of 225 feet along the south edge of the road; then went back onto the improved portion and traveled a distance of 105 feet diagonally across the pavement; and finally went into the north ditch and continued a distance of 150 feet east. It appears that in the construction of the road dirt had been excavated from both sides to build an embankment or elevation for the shoulders and pavement. From three separate "gouges" in the earth on the north side the trooper concluded the automobile had rolled over three times.

Two photographs of the automobile were introduced in evidence. They showed it to be badly wrecked and distorted with the possible exception of the trunk at the back, which is not clearly shown in the pictures. Both officers testified the pavement and shoulders were dry. It was Captain Monahan's recollection that the respondent told him he was driving about 85 miles per hour, and that he had had several highballs. Being asked on cross-examination if there wasn't some mud in the ditches at the sides of the road, the Captain answered that he thought they were dry, but wasn't sure.

There was no clear proof that respondent was intoxicated at the time, but that inference seems warranted. He and the appellant had come from Joplin, Missouri to attend a party given at her employer's home in Baxter Springs. They had left from the home of a girl friend in Joplin where she had had one highball. She didn't know whether respondent had had any. On the going trip to Baxter Springs appellant drove the automobile in a prudent manner and they engaged in conversation. Appellant testified she had one highball before dinner at the party in Baxter Springs and two after dinner. These with the one she [144] had before leaving Joplin made four during the entire period.

On the going trip from Joplin to Baxter Springs another couple rode with appellant and respondent, a Mr. and Mrs. Orville Lanham. During the party there respondent and Mr. Lanham had some trouble and the Lanhams were not with them on the return trip. Respondent left before one of the main events of the party—the showing of some motion pictures. Appellant waited outside some five minutes for him.

At that timè, she said, he did not appear to be intoxicated. Later she testified he was not under the influence of liquor when they left but that he would not talk to her as he had on the way over there. She thought he was angry. Captain Monahan of the Kansas State Highway Patrol testified that respondent told him at the hospital in Baxter Springs the morning after the casualty that he had had "several highballs" the night before.

Respondent's amended answer to appellant's petition pleaded in the alternative that he *was* or was not under the influence of intoxicating liquor at the time of the casualty, and that he was *ignorant* as to which of those alternatives was true; but that he was informed and believed one or the other of them was true. Then it *denied* he was intoxicated, but affirmed *if he was* appellant was guilty of contributory negligence in riding with him. Similarly the answer alleged that if respondent was guilty of gross and wanton negligence within the meaning of the Kansas guest statute, the plaintiff was guilty of contributory negligence in that she knew, or should have known, of respondent's condition and the manner in which he might drive his automobile before she entered same, and after entering and riding with him she should have taken steps to protect herself, by remonstrating, or otherwise.

The Kansas guest statute, Section 8-122 b, General Statutes of Kansas, 1935, is as follows:

"Right of guest to collect damages from owner or operator. That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless' such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle (L., 1931, Ch. 81, Sec. 1; May 28)."

Respondent's brief says: "The Kansas Supreme Court in a long, unchanged line of decisions over a 20-year period, has never upheld a guest recovery for gross and wanton negligence," citing sixteen Kansas decisions. It also quotes a definition of a wanton act appearing in In re Estate of Wright, 170 Kan. 600, 607, 228 Pac. (2d) 911, 917(7), decided March 10, 1951, as follows: "A wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonnesss, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It might be said to include a willful, purposeful, intentional act, but not necessarily so; it is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result."

In Davis v. Wyatt, 359 Mo. 963, 971, 224 SW. (2d) 972, 976 (2, 3), this court had occasion to determine the meaning of "wanton" or wantonness as used in the Kansas guest statute, and followed the definition given in Frazier v. Cities Service Oil Co., 159 Kan. 665, 666, 157 Pac. (2d) 822, which was substantially the same as that in the Wright case just cited and quoted above. These and other decisions are cited in 44 Words & Phrases (Perm. Ed.) Pocket Part, p. 173, under a headnote "conscious failure to use due care"—with a realization of the imminence of danger to others. This Davis case cites Plant v. Thompson, Trustee, 359 Mo. 391, 397 (2), 221 SW. (2d) 834, 837, a railroad personal injury suit, in which several Federal decisions were cited holding the conduct of the defendant or an employee was wanton, but the opinion in the Plant case held on the facts that the conduct [145] of the employees there was only negligent and not wanton.

In another decision cited by respondent, Mason v. Banta, 166 Kan. 445, 446, 449-50, 201 Pac. (2d) 654, the Kansas Supreme Court reversed the trial court and ordered a demurrer sustained to the plaintiff guest's petition which alleged the following facts. The defendant wantonly drove his automobile at 47 miles per hour at night along a narrow muddy dirt and clay road about three miles from Lawrence, Kansas, with which he was familiar. The traveled portion was twelve feet wide and led around a curve, up a hill, and across a narrow bridge. During the ride from Lawrence the plaintiff had twice asked him to slacken his speed, but failed to do after they reached the dangerous part. The defendant ran into a ditch causing plaintiff's injuries. The opinion cited several Kansas decisions, among them Donelan v. Wright, 148 Kan. 287, 81 Pac. (2d) 50, which was reviewed at some length.

In that case the defendant was driving along a highway at midnight at a speed of 40-45 miles per hour with his headlights turned off. His female guest, the plaintiff, protested repeatedly *before* they reached Solomon, Kansas, but not afterward, and about a mile beyond there his automobile collided with another. The Donelan opinion held that where there is obvious danger the guest must remonstrate and if necessary ask for an opportunity to leave the car; and "if the danger increases the need of the guest to take measures for his own safety becomes more imperative, and if he does nothing his negligence is the same grade as that of the driver and he cannot recover." The decision ruled the allegations of the petition failed to make a submissible case because part of them were conclusions, and because plaintiff did not further remonstrate after they had passed through Solomon, Kansas. The Mason case applied the same doctrine.

In the instant case the appellant testified she protested several times, the first time after respondent started increasing the speed of the automobile, and when the car started weaving around she pro-

**174**

tested again. She protested "at intervals, but it was—it couldn't have lasted too long." After she had protested at least twice and the car speed was increased she told him if he didn't slow up she wanted out or he could take her back to Baxter Springs. When the car went off the right side of the road she was thrown around and that was the last she could remember. On cross-examination she said she told respondent about three times to slow up; and that the car weaved across the center line two or three times before it went off the shoulder of the highway. There were some inconsistencies between her testimony and what she had said in a previous deposition, but these were for the jury. The Highway Patrol Trooper Williams testified the skid marks on the highway ran 225 feet along the south side of the pavement, thence 105 feet diagonally northeast across the pavement, and then 150 feet along the north ditch or shoulder where the car turned over three times as indicated by the "gouges" in the dirt. This was a total distance of 480 feet. It obviously had been traveling at high speed. We cannot see anything in this case indicating the appellant was tardy in her protests.

Respondent further contends: "Plaintiff's conditional protests, because they were conditional, 'slow down or let me out, or take me back to Baxter Springs,' late in time, and not directed against weaving or going off the road, were not sufficient to take her out of the drastic contributory negligence cases in Kansas." On these points respondent cites the Mason and Donelan cases, supra, and Naglo v. Jones, 115 Kan. 140, 222 Pac. 116. We are unable to find any pronouncement in any of these decisions that the guest in an automobile must protest specifically and unconditionally, and tell the car driver exactly what to do. Appellant here in the first instance did ask the respondent to retard the speed of the automobile, and when he persisted and drove the automobile still faster she asked him to let her out or take her back to Baxter Springs. It seems to us this was sufficient.

The point ruled in the Mason case at the pages cited was that a bare allegation of "gross and wanton negligence" was a mere [146] conclusion when unaccompanied by a statement of the facts constituting such negligence. But that is an entirely different thing. Also it defined wantonness, which we have already done citing the later Wright case, supra. In the Donelan case a jury was required to return a special verdict making separate findings on a number of issues of fact. The decision held their findings compelled the conclusion that the defendant was not guilty of gross and wanton negligence. The fact coercing that conclusion was that the guest had not complained for a mile before the casualty, although he had previously done so. In the Naglo case the plaintiff guest admitted he did not complain because the respondent was driving at a reckless speed of 65 miles per hour and too close to the side of the road. The plain-

tiff's excuse was that the defendant was older than he and supposed to know his business, and that he (plaintiff) didn't want to bother him. We see no merit in this assignment.

Two other assignments in respondent's brief are that there must be a *realization* on the part of the defendant, of the imminence of danger, and that there was no evidence in this case showing the defendand was conscious or knew of the weaving of the car or that it was about to go off the pavement, as required by Kansas law. In our view these assignments are wholly without merit. The definition of wantoness given in the late Wright case, quoted earlier in this opinion, is that the "wanton *act* must *indicate* a realization of the imminence of danger." (Italics ours) As we interpret the decision it means that the facts may speak for themselves.

In this case the respondent told Captain Monahan of the State Highway Patrol, according to the latter's recollection, that his car speed when it went off the *pavement* was about 85 miles per hour, and that he had had several highballs. The appellant testified the respondent "was driving all right until after we passed the bridge." Then she noticed it was "weaving over the highway, not staying on his side of the road," and she protested. This was while it was still on the road. She protested again and said she wanted to get out or be taken back to Baxter Springs. It was going over 70 miles per hour, swerving and increasing its speed. It "went *off* on the right side of the road." (Italics ours) It had increased its speed to 85 miles per hour at that time. This, in our opinion, was enough to make a prima facie case that respondent realized the imminence of danger.

Respondent's brief in later assignments cites cases from other states, to which we shall not refer, except one from Missouri, Stevers v. Walker, 233 Mo. App. 636, 642-4(3), 125 SW. (2d) 920, 924 (3, 4). That decision which has never been cited since holds we will defer to the decisions of another state interpreting its own statutes, and it cites several Kansas decisions on the Kansas guest statute, the latest of which is Cohee v. Hutson, 143 Kan. 784, 57 Pac. (2d) 35, decided in May, 1936. Our Stevers case says the Kansas courts have ruled the guest statute there means that an automobile driver must have inflicted the injury to the plaintiff wilfully, or "acted with such reckless disregard with realization of known imminent danger as amounted to willingness to injure." We do not understand that to be the rule in Kansas now. As stated in the Wright case, supra, 170 Kan. l.c. 607, 228 Pac. (2d) l.c. 917 (7), the present doctrine is that wantonness comes *between* negligence on the one hand and wilful or malicious conduct on the other; that it is more than negligence and less than wilfulness.

In a supplemental typewritten brief respondent discusses three recent decisions which were interlined in appellant's brief and referred to in the oral argument here, wherein the Kansas Supreme

Court held the petition in a guest case under the Kansas statute did state a good cause of action, and either affirmed the judgment of the trial court so holding, or reversed it where the trial court had held it did not. They are: Hanson v. Swain, 172 Kan. 105, 238 Pac. (2d) 517; Bisoni v. Carlson, 171 Kan. 631, 237 Pac. (2d) 404; Fyne v. Emmett, 171 Kan. 383, 233 Pac. (2d) 496. Respondent's supplemental brief points out certain differences in the facts in those cases from the facts [147] in the cases cited in the original briefs. That is always true. But we can see no difference in principle between them and the facts in the case before us.

For the reasons stated the judgment is reversed and the cause remanded for a new trial.

*Tipton, Leedy, Hollingsworth* and *Hyde, JJ.*, concur; *Conkling, J.*, dissents in separate opinion; *Dalton, J.*, dissents and concurs in dissenting opinion of *Conkling, J.*

CONKLING, J. (dissenting).— I respectfully dissent from the principal opinion prepared by the Chief Justice. Inasmuch as I still have the views of this case which were expressed in the opinion of Commissioner Lozier, prepared for Division One, I therefore adopt and file herein as my dissent, the following portion of that opinion:

From plaintiff's evidence it appears that: both plaintiff and defendant lived in Joplin, Mo.; they had been friends for three years and had "dated" during that time; plaintiff had invited defendant to a Valentine party at Baxter Springs on the night of February 15, 1948; defendant took her in his 1947 DeSoto car; the accident occurred while they were returning to Joplin, at 10:30 p. m., about 3½ miles east of Baxter Springs; defendant was driving; the car ran off the pavement and into the north highway ditch; the highway runs straight east and west and is a little upgrade for eastbound traffic; the pavement was "blacktop," 24 feet wide, with clay and gravel shoulders; there was no marked centerline; both pavement and shoulders were dry; and no other vehicle was involved in, or even near at the time of, the accident.

Plaintiff stated that she had one highball before leaving Joplin at 5:30, one after their arrival in Baxter Springs and two after the dinner there; that defendant had several highballs during the same interval of time; and there was no liquor in the car at any time. "Q. Did Glenn (Zumwalt) appear intoxicated when you folks left to come back to Joplin? A. No, sir. * * * Q. It is your testimony today, is it, that neither you nor Mr. Zumwalt was under the influence of liquor when you left there (Baxter Springs)? A. Yes, sir, that is right."

Plaintiff testified that: on the way from Joplin to Baxter Springs there was nothing unusual about defendant's driving; when they

started back to Joplin there was nothing unusual about his appearance; he did not appear angry; there was no conversation between them and "there had been no trouble of any kind" between plaintiff and defendant either before or after the night of the accident; and they continued to "date" after that night.

Plaintiff said that, after they left Baxter Springs and started east toward Joplin, defendant "was driving all right and not off the road at any time until after we passed the bridge, I noticed the car weaving over the highway, not staying on his side of the road, I noticed the speedometer was over 70 miles an hour, we went off on the right side (shoulder?) of the road, and I remember being thrown around in the car, and that was the last I remember." Plaintiff did not know how far the car traveled while swerving or the time involved, "it happened too quick; * * * it seeemed the car was going faster while weaving; I did not look at the speedometer again. * * * Q. Did you say anything to Mr. Zumwalt about the car or his driving? A. Yes, sir. I told him to slow down several times. Q. What else did you say? A. I told him if he didn't I wanted out or he could take me back to Baxter. * * * Q. When did you make your first protest in regard to the movement of the car? A. After he started increasing his speed. Q. And what else was happening at the time of the protests? A. Well, he started increasing his speed the first time, and after it started weaving over the pavement I told him again. [148] Q. What, if anything, did Mr. Zumwalt say to you? A. He didn't say anything."

Plaintiff explained that by "weaving" she meant that the car was not staying on its side of the road, that it went across the center of the pavement, but that she did not know whether the weaving "was mechanical or Mr. Zumwalt was causing it. * * * Q. Outside of the increase in speed, from the time you started out at Baxter you noticed nothing untoward or unusual about Mr. Zumwalt's driving until the time the weaving began; isn't that right? A. Only the speed, yes, sir. Q. You didn't make any complaints before you noticed this weaving, did you? A. No, sir." She stated that the car went faster while it was weaving and before it went off the pavement.

A member of the Kansas State Highway Patrol, who examined the site the next morning, testified that it appeared that defendant's car "had run from the improved portion (of the highway) and traveled a distance of 225 feet along the south edge of the road, and then went back into the improved portion and traveled a distance of 105 feet diagonally across the pavement, went into the north ditch and continued on a distance of 150 feet east." Another highway patrolman testified that the next morning he talked to defendant who was then in a hospital. He asked defendant the rate of speed of the

car when it went off the pavement. ''Q. And what did he tell you? A. I think he told me about 85 miles an hour.''

The parties agree that construction of the Kansas guest statute by the Supreme Court of Kansas is controlling. Yarnall v. Glass, 240 Mo. App. 451, 217 SW 2d 283. Plaintiff says: ''Since no similar fact situation has been passed upon by the Kansas court, we ask this court to apply the law to the facts and hold that the defendant was guilty of gross and wanton negligence. * * * We are only concerned with the question of what amounts to wanton negligence as that term has been recently defined by the Kansas Supreme Court in Bailey v. Resner, 168 Kan. 439, 214 P. 2d 323.''

In that case the court said that it had theretofore held that ''gross and wanton negligence'' meant ''wantonness'' and had defined that term ''in nearly a score of cases since the enactment of the guest statute in 1931.'' After citing those cases, the court stated: ''And it may be said that the sum total of these definitions expounded in the past amounts to this—a wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It might be said to include a willful, purposeful, intentional act, but not necessarily so; it is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result.

''The term 'wantonness' or 'wanton conduct' has been defined by this court in cases other than those involving the guest statute, G. S. 1935, 8-122b, and it is difficult to find a more adequate definition of the term than is found in one such case—Frazier v. Cities Service Oil Co., supra, 159 Kan. at page 666, 157 P. 2d at page 829: '* * * it may be concluded that as to injuries inflicted, wanton conduct or wantonness comes between negligence on the one hand and wilful or malicious misconduct on the other; that it is more than negligence and less than wilfulness, and to constitute wantonness the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. Stated in another way, if the actor has reason to believe his act may injure another, and does it being indifferent to whether it does or not, he is guilty of wanton conduct.' ''

So, was instant plaintiff's case lacking in these particulars? Did her evidence fail to show that defendant realized the imminence of injury to plaintiff and that he had reason to believe his act might injure her but, nevertheless, acted or refrained from acting because of his indifference as to whether she might sustain injury? This

question must be answered by application of the same "elementary rule" followed by the Supreme Court of Kansas in Srajer v. Schwartzman, 164 Kan. 241, 188 P. 2d 971, viz., by consideration of her evidence, together with all reasonable inferences therefrom, in the light most favorable to her.

Plaintiff concedes that under Srajer v. Schwartzman, supra, "a reasonably high speed is not of itself enough to prove gross and wanton negligence." See also Anderson v. Anderson, 142 Kan. 463, 50 P. 2d 995; Murrell v. Janders, 141 Kan. 906, 44 P. 2d 218; Leabo v. Willett, 162 Kan. 236, 175 P. 2d 109. However, plaintiff contends, here there were the "additional elements of increasing the speed while the car was weaving from one side of the road to the other and at a time when defendant had been drinking and was angry."

But plaintiff affirmatively testified that defendant was not, and did not appear to be, intoxicated. There was not even a suggestion in the record that his drinking earlier in the evening influenced his driving after leaving Baxter Springs. We are not impressed by the argument that defendant's drinking was an "additional element of wantonness." (Elsewhere in her brief plaintiff states that "it was immaterial as to whether defendant was drunk or sober because it was the manner of his driving that is to be judged. A sober man can be just as reckless, deliberate, intentional and wanton in his conduct as a drunken man.")

We find no testimony to support the contention that defendant "was angry." Plaintiff said that he did not appear angry and that there had been no trouble between them. That "defendant was angry" cannot reasonably be inferred from the fact that, at the time of or immediately before the accident, he was "not talking" to plaintiff, and that there had been no conversation during the 3½ mile drive from Baxter Springs.

Nor can wantonness be inferred merely from the fact that the car's speed was increased while it was weaving. Plaintiff said that by "weaving" she meant the car was left of the center of the pavement. She did not know how far it traveled or how long any part of the car was left of the center; that it all "happened too quick"; and that she did not know whether it was an act or omission of the driver or a mechanical defect that caused the car to be left of the center.

We cannot agree that the "weaving" of the car at high speed is an "additional" element of wantonness, and that "defendant's reckless attitude and his indifference to danger are certainly proved by the movements of the car." There was no evidence that the weaving was deliberately caused by defendant or that he was "zigzagging" it back and forth across the highway intending to scare plaintiff, or that "he did not care what happened to him or to the plaintiff," as she suggests. While there was no showing that the increase in speed was due to defendant's "stepping on the accelerator," we can only

infer that, if he did, it was a part of his effort to get off the shoulder and back on the pavement. There is nothing in the record from which it may be reasonably inferred that defendant realized that increasing his speed might result in injury to plaintiff and that he acted, indifferent as to whether it did or not.

Therefore, we cannot assume or infer from the increase of speed that defendant was either indifferent or that he was even willing that plaintiff be injured. While plaintiff is entitled to every reasonable favorable inference, "this principle of favorable consideration cannot be invoked to supply missing evidence or be used as a basis for unreasonable or speculative inferences favorable to plaintiff." Williams v. Illinois Cent. R. Co., 360 Mo. 501, 229 SW 2d 1, 6. And: "A finding based on speculation will not be permitted to stand." Seago v. New York Cent. R. Co., 349 Mo. 1249, 164 SW 2d 336, 340, 147 A. L. R. 372.

Plaintiff's testimony was that she first protested after the car, or a portion of it, was left of the center of the pavement; that she then noticed the speedometer just "a few seconds before the car went off the south shoulder"; that her requests were for defendant to slow down and "if he didn't I wanted out or he could take me back to Baxter." Plaintiff did not know how much time elapsed, "it happened too quick."

Assuming that she had time within which to make more than one protest, protests against a driver's seeming lack of care are not uncommon. As the trial judge here observed: "There was some remonstrance on her part, which is not unusual on the part of a guest, particularly wives,—but outside of speed there is nothing in this case to indicate wantonness as defined by the laws, of the State of Kansas."

The unfortunate occurrence of an accident *immediately* following a guest's protest, warning, remonstrance or exclamation cannot convert into wantonness the prior conduct of the driver if, in fact, such conduct was not of itself of a character that the law classifies as wanton. See and compare Cohee v. Hutson, 143 Kan. 784, 57 P. 2d 35; Ewing v. Edwards, 140 Kan. 325, 36 P. 2d 1021; Donelan v. Wright, 148 Kan. 287, 81 P. 2d 50; Mason v. Banta, 166 Kan. 445, 201 P. 2d 654.

Both plaintiff and defendant cite some of the Kansas cases collected in Bailey v. Resner, supra. Plaintiff discusses eight as "involving more aggravated facts than those involved in the other Kansas decisions." Observing that no recovery was allowed in any of these cases, she asserts that "the Kansas Supreme Court has never passed on any case involving as aggravated negligence as in the present case." We cite but need not summarize these cases. In most instances, that defendant's negligence here was not "more aggravated" is shown by the parenthetical quotations taken from summaries in plaintiff's brief. Stout v. Gallemore, 138 Kan. 385, 26 P. 2d 573 ("driving

40 to 50 miles per hour and while trying to hug and kiss the young lady guest"); Sayre v. Malcolm, 139 Kan. 378, 31 P. 2d 8 ("Momentary inattention while driving 35 miles per hour"); Aduddell v. Brighton, 141 Kan. 617, 42 P. 2d 555 ("driving 40 to 50 miles per hour at night with the headlights of the car shining 75 to 100 feet ahead and attempting to go through a herd of cattle rather than applying his brakes and stopping"); Murrell v. Janders, 141 Kan. 906, 44 P. 2d 218 ("driving 60 to 70 miles per hour on a heavily traveled highway at a time when three automobiles were approaching and defendant's automobile was struck when the center approaching automobile attempted to pass the first one and cut back part way across the line"); Anderson v. Anderson, supra ("driving 65 to 70 miles per hour when defendant knew he had a defective left tire and upon a gravel road on which there was a ridge of gravel 18 inches high at the side"); Leabo v. Willett, supra ("driving 65 to 70 miles per hour over a rutty dirt road"); Cohee v. Hutson, supra ("defendant's loaded cattle truck was stopped beside a ditch and plaintiff, at defendant's direction, got out to place a rock under a wheel; he was attempting to place another rock under the wheel and warned defendant that it was not time to start the truck when defendant started the truck and it fell over and injured plaintiff").

Compare the Kansas cases cited by defendant, in none of which was the guest permitted to recover: Elliott v. Peters, 163 Kan. 631, 185 P. 2d 139; In Re Wright's Estate, 170 Kan. 600, 228 P. 2d 911; and Bailey v. Resner, Ewing v. Edwards, Donelan v. Wright, and Mason v. Banta, supra.

Plaintiff's cited cases from jurisdictions other than Kansas and involving guest statutes of other states are not determinative here. McCown v. Schram, 137 Neb. 498, 289 NW 890, Id., 139 Neb. 738, 298 NW 681, where the guest was allowed to recover under the Kansas statute, is readily distinguishable upon the facts. Taylor v. Laderman, 349 Mo. 415, 161 SW 2d 253, Hall v. Wilkerson, (Mo. App.) 84 SW 2d 1063, and McCarty v. Bishop, 231 Mo. App. 604, 102 SW 2d 126, do not aid plaintiff as they involved either the Illinois or Iowa guest statutes. And see Stevers v. Walker, 233 Mo. App. 636, 125 SW 2d 920, involving the Kansas statute.

Under plaintiff's own testimony, and giving her the benefit of every reasonable favorable inference which her evidence would tend to support, we have found nothing in this record to even suggest a realization by defendant of the imminence of danger and a reckless disregard and complete indifference and unconcern for probable consequences. We hold that plaintiff failed to make a submissible case under the Kansas guest statute as applied by the Supreme Court of that state.