No. 37,646

GEORGIA MAE BAILEY, *Appellee*, v. R. N. RESNER and PAULINE RESNER, *Appellants*.

No. 37,659

GEORGIA MAE BAILEY, *Appellant*, v. RAYMOND RESNER, *Appellee*.

(214 P. 2d 323)

Opinion filed January 28, 1950.

*Jerry E. Driscoll,* of Russell, argued the cause, and *Richard M. Driscoll,* also of Russell, was with him on the briefs for R. N. Resner and Pauline Resner, appellants in case No. 37,646, and for Raymond Resner, appellee in case No. 37,659.

*C. R. Holland,* of Russell, argued the cause, and *Walker Wm. Smith,* also of Russell, was with him on the briefs for Georgia Mae Bailey, appellee in case No. 37,646, and appellant in case No. 37,659.

The opinion of the court was delivered by

ARN, J.: This is an action for personal injuries sustained by plaintiff while riding in an automobile as the guest of defendants, and is brought under the guest statute, G. S. 1935, 8-122b. The defendants R. N. Resner and Pauline Resner are husband and wife and owners of the automobile, and their son Raymond Resner, the other defendant, was driving it at the time of plaintiff's injuries. A demurrer by Mr. and Mrs. Resner to plaintiff's petition was overruled and they appeal (No. 37,646). A separate demurrer by Raymond to the same petition was sustained, and from that order plaintiff has appealed (No. 37,659). The two appeals have been consolidated and to avoid confusion as to the identity of the parties, they will be referred to as plaintiff and defendants.

The pertinent paragraphs of the petition follow:

"2. That the defendant, R. N. Resner, also known as Rudolph N. Resner, was on the 24th day of October, 1946, the owner of one 1940 2-door Ford Sedan car which was used by R. N. Resner or Rudolph N. Resner and Pauline Resner, his wife, for their family use and enjoyment.

"3. That on the 24th day of October, 1946, the said plaintiff was invited to make a trip to Hoisington, Kansas, by said R. N. Resner or Rudolph N. Resner and Pauline Resner, his wife, which trip was to accomplish some mission or errand for the said R. N. Resner and Pauline Resner, his wife, the purpose of which mission or errand being unknown to this plaintiff, but which invitation was accepted by this plaintiff.

"4. That the defendants, R. N. Resner or Rudolph N. Resner and Pauline Resner, are the father and mother of Raymond Resner, their son, who was of the approximate age of 23 years and who was afflicted with the disease of epilepsy and has been so afflicted for a period of approximately two or three years before said date of October 24, 1946, and which disease caused said Raymond Resner to suddenly lose consciousness and control of himself, a fact which was well known to the defendants, and each of them, but which was unknown to this plaintiff, and that said defendants and each of them knew, by reason of said condition of said Raymond Resner, that he was a dangerous and unsafe person to drive and operate a motor vehicle in that they knew or should have known that, if said Raymond Resner was attacked or had an

epileptic seizure or epileptic fit, he would have no control over said car or automobile or over himself regardless of the speed at which he was operating said automobile at the time of said seizure, and knew or should have known that in the event that said Raymond Resner had or would have an epileptic seizure or fit while he was driving or operating said automobile that the lives of all occupants of such automobile, including the life of said Raymond Resner, would be subject to great danger and peril.

"5. That each of said defendants knew that in the event said Raymond Resner was attacked or had an epileptic seizure or epileptic fit while driving or operating said automobile that said automobile, in itself at such time, would be a dangerous instrument or agency to the lives of any person who might be a passenger or occupant of said automobile.

"6. That notwithstanding said knowledge on the part of said defendants, and which facts were unknown to this plaintiff, the said defendants caused said automobile to be driven and operated by said Raymond Resner for the purpose of making a trip from Russell, Kansas, to Hoisington, Kansas, and that at said time, the said defendants knew that in the event the said Raymond Resner had or was attacked by an epileptic seizure or epileptic fit while driving or operating the automobile in which this plaintiff, the defendant Pauline Resner, Mrs. Charles O. Frost, another invitee, and said Raymond Resner were passengers or occupants, that said automobile or car was a dangerous instrument or agency to the lives of said occupants or passengers and with said knowledge said defendants purposely, wantonly and negligently permitted said Raymond Resner to drive and operate said automobile.

. . . . . . . . . . . . . .

"13. That all the injuries and damages, hereinbefore set out, and which were incurred and suffered by this plaintiff, were the approximate cause of the said defendants R. N. Resner and Pauline Resner, his wife, in permitting and allowing and requiring said Raymond Resner, their son, to drive and operate said automobile or motor vehicle and that by reason thereof, this plaintiff is entitled to damages against the defendants, and each of them, in the sum of $10,000.00. . . ."

Plaintiff concedes that her relationship as a passenger in the defendants' car on the day of the accident was that of a "guest," and that her action is predicated entirely upon the guest statute which provides (G. S. 1935, 8-122b):

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

By many previous decisions of this court the phrase "gross and wanton negligence" has been held to mean "wantonness" (*Stout v. Gallemore*, 138 Kan. 385, 26 P. 2d 573; *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 664, 157 P. 2d 822, and cases cited therein; *Elliott v. Peters*, 163 Kan. 631, 635-6, 185 P. 2d 139).

What is wantonness and how should it be defined? This court has defined it in nearly a score of cases since the enactment of the guest statute in 1931 (*Stout v. Gallemore,* supra; *Koster v. Matson,* 139 Kan. 124, 128, 30 P. 2d 107; *Sayre v. Malcom,* 139 Kan. 378, 379, 31 P. 2d 8; *Ewing v. Edwards,* 140 Kan. 325, 326-7, 36 P. 2d 1021; *Aduddell v. Brighton,* 141 Kan. 617, 618-9, 42 P. 2d 555; *Anderson v. Anderson,* 142 Kan. 463, 465-466, 50 P. 2d 995; *Cohee v. Hutson,* 143 Kan. 784, 787-9, 57 P. 2d 35; *Blosser v. Wagner,* 144 Kan. 318, 321, 59 P. 2d 37; *Donelan v. Wright,* 148 Kan. 287, 290-1, 81 P. 2d 50; *Frazier v. Cities Service Oil Co.,* supra; *Leabo v. Willett,* 162 Kan. 236, 238, 175 P. 2d 109; *Elliott v. Peters,* supra; *Kniffen v. Hercules Powder Co.,* 164 Kan. 196, 206, 188 P. 2d 980; *Srajer v. Schwartz- man,* 164 Kan. 241, 248-9, 188 P. 2d 971; *Mason v. Banta,* 166 Kan. 445, 447-8, 201 P. 2d 654), and it may be said that the sum total of these definitions expounded in the past amounts to this—a wanton act is something more than ordinary negligence, and yet it is some- thing less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless dis- regard and complete indifference and unconcern for the probable consequences of the wrongful act. It might be said to include a willful, purposeful, intentional act, but not necessarily so; it is suffi- cient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result.

The term "wantonness" or "wanton conduct" has been defined by this court in cases other than those involving the guest statute (G. S. 1935, 8-122b), and it is difficult to find a more adequate definition of the term than is found in one such case—*Frazier v. Cities Service Oil Co.,* supra, at page 666:

". . . it may be concluded that as to injuries inflicted, wanton conduct or wantonness comes between negligence on the one hand and willful or malicious misconduct on the other; that it is more than negligence and less than willful- ness, and to constitute wantonness the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the immi- nence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. Stated in another way, if the actor has reason to believe his act may injure another, and does it being indifferent to whether or not it injures, he is guilty of wanton conduct."

We began interpreting the guest statute in *Stout v. Gallemore,* supra (p. 390), by saying the act need not be intentional or willful, but some of our later decisions may inadvertently infer otherwise.

For example, in *Sayre v. Malcom*, supra (p. 380), we said: "There was no allegation that plaintiff *purposely* drove his car into the culvert," and that one word "purposely" is sometimes seized upon to argue that an act must be "purposely and intentionally" committted in order to be "wanton." In *Cohee v. Hutson*, supra, at pages 788-9, we indicated that a plaintiff could not "wantonly" *destroy his own cattle, truck and property;* and in *Donelan v. Wright*, supra, at page 291, we said "that to hold defendant guilty of *wanton conduct* we would be compelled to say that he was willing *to injure himself and his sweetheart and wreck his grandmother's automobile."* It is sometimes argued that this language in the Cohee and Donelan cases makes it appear that to be "wanton" the act must be so intentional that the host attempted to destroy his own property and injure himself or his loved ones. Then in *Srajer v. Schwartzman*, supra (p. 250), we said the record did not infer any *ill will between the host and guest*, which language might be taken to infer that a showing of ill will is necessary to establish "wantonness." Each of the above statements from the four cases just cited was perhaps harmless as applied to the particular facts involved in that respective case, but if singled out as abstract statements of law, the statements appear to place a too strict construction on the meaning of wantonness. Certainly ill will of the host toward the guest, or an intentional desire to injure a person or destroy property is not necessary as an element of wantonness. (Emphasis supplied in foregoing quotations.)

The petition here before us, given the most liberal construction possible, purports to charge "wantonness" by alleging that the twenty-three-year-old driver of the host car was afflicted with epilepsy and had been so afflicted for two or three years; that such disease caused said driver to have sudden seizures and to suddenly lose consciousness and control of himself; that if attacked by such seizures said driver would have no control over his car, and the lives of all occupants of the car would be endangered; that if said driver suffered such an attack while driving, any automobile in his hands at such time would be a dangerous instrumentality; that all of such facts were known to the driver, Raymond Resner, and his parents R. N. and Pauline Resner, and were unknown to plaintiff; that with said knowledge the defendants purposely, wantonly and negligently permitted said driver to drive and operate said automobile.

The last allegation to the effect that defendants' acts were committed *purposely* and *wantonly* adds little if anything to the petition because wanton acts cannot be pleaded by merely alleging that a

certain act was *wantonly* or *purposely* committed. On the other hand, a cause of action under the guest statute may be fully stated in a petition which does not mention the word "wanton" or the words "gross and wanton negligence." So we have the question before us as to whether the acts set forth in the petition constitute wantonness, notwithstanding the pleader's statement that they were committed purposely and wantonly. To determine the sufficiency of the petition, we must strip it of the various descriptive terms used to describe defendants' acts and rely upon the specific acts themselves which are set forth in the petition.

This court is inclined toward the view that even with defendants' knowledge of the driver's ailment and the possibility of its recurrence, his driving the car under otherwise reasonable and ordinary conditions does not constitute a reckless disregard and complete indifference and unconcern for the safety of the occupants. At the most it was just ordinary negligence for which there is no liability under the guest statute. There is no allegation that defendants were warned by the conduct or appearance of Raymond that he was likely to have an epileptic seizure upon this trip; and there is no specific allegation that any persons knowing of his condition must have anticipated that he might be seized with an epileptic attack at any moment without warning. This petition simply does not sufficiently allege that the defendants had reason to believe Raymond would likely, or probably, be stricken by an epileptic seizure while driving the host car, nor that defendants realized the imminence of such danger with a total disregard for the consequences. Saying as we do, that the petition falls short as a matter of law of alleging wantonness, the demurrer to the petition was properly sustained as to the driver Raymond Resner, and should have been sustained as to the other defendants and parents of the driver, R. N. and Pauline Resner.

The next question raised by this appeal is the constitutionality of G. S. 1935, 8-122b, commonly referred to as the guest statute. The plaintiff below argues its unconstitutionality as being in violation of section 18 of the bill of rights of the Kansas constitution. We have dealt at some length with that question in *Wright v. Pizel*, Nos. 37,743 and 37,744 consolidated, *post*, page 493, decided this day by this court. Suffice it to say here, that with the term "wantonness" construed as we have construed it in the instant case and in earlier cases, we have no difficulty in upholding G. S. 1935, 8-122b.

The judgment of the trial court sustaining the demurrer of the

defendant Raymond Resner is affirmed, and the judgment of that court overruling the demurrers of the defendants R. N. and Pauline Resner is reversed.

SMITH, J., not participating.

ARN, J. (dissenting): I cannot agree with the statement contained in the second paragraph of the syllabus and the corresponding portion of the majority opinion. I realize this court has gone a long way in consistently holding as a matter of law that a given state of facts does not constitute wantonness as that term has been applied to the guest statute (G. S. 1935, 8-122b); and I will concede that here we have a rather close question in applying the rule as to what constitutes wantonness. Perhaps plaintiff would have had a better petition had she fortified it with some of the allegations, the absence of which has drawn some comment in the majority opinion. However, giving this petition the liberal interpretation to which it is entitled as against demurrer, I am forced to the conclusion that the question of whether the alleged acts of defendants constitute wantonness is one which should be determined by the trier of the facts—and that it is not for the courts to say upon a demurrer to a petition as comprehensive as the one now before us, that the alleged acts are insufficient as a matter of law to constitute wantonness. To my notion, the petition was good as against demurrer.