No. 38,390

VICTOR BISONI, Administrator of the Estate of Allen Bisoni, Deceased, *Appellant,* v. CLAYTON D. CARLSON and A. J. CARLSON, *Appellees.*

(237 P. 2d 404)

Opinion filed November 10, 1951.

*Pete Farabi,* of Pittsburg, argued the cause, and *Owen S. Samuel,* of Emporia, and *Sylvan Bruner, L. M. Resler,* and *Morris Matuska,* all of Pittsburg, were with him on the briefs for the appellant.

*John F. Eberhardt,* of Wichita, argued the cause, and *George Siefkin, George B. Powers, Samuel E. Bartlett, Carl T. Smith, Stuart R. Carter,* and *Robert C. Foulston,* all of Wichita, and *Walter E. Hembrow* and *Wilbur G. Leonard,* both of Council Grove, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This was an administrator's action for the alleged wrongful death of Allen Bisoni, sixteen years of age. The defendants were Clayton D. Carlson and his father, A. J. Carlson. Defendants joined in a demurrer to plaintiff's amended petition upon

the ground that it does not state facts sufficient to constitute a cause of action in favor of plaintiff and against defendants, and for the reason that it affirmatively shows on its face that plaintiff is barred from recovery. This demurrer was presented to and considered by the court and was sustained. Plaintiff has appealed.

In addition to other matters pertinent to such an action it was alleged that about 12:30 p. m. November 24, 1948, the decedent Bisoni and several other boys were invited by the defendant, Clayton D. Carlson, a minor under the age of sixteen years, to take a ride in a 1933 Ford coach owned by the defendant, A. J. Carlson, the automobile having defective steering apparatus and defective brakes; that Bisoni rode with Clayton D. Carlson south of Council Grove on state highway K 13, the highway being of gravel construction, with great amounts of loose gravel thereon and a gravel windrow several inches high on the west side thereof; that at a point about one mile south of Council Grove on the highway the defendant, Clayton D. Carlson, drove the car at a high, dangerous and excessive rate of speed in excess of fifty miles per hour; that Bisoni and other passengers of the car repeatedly asked Clayton D. Carlson to slow down and drive carefully, and Bisoni told the driver to stop so that he could get out of the car or he would jump out; that Clayton D. Carlson ignored the remonstrances and requests and failed to slow down and reduce his speed or to stop the car, and refused to allow Bisoni to get out of the car; that while traveling at the dangerous and excessive rate of speed Clayton D. Carlson caused the car to swerve from side to side on the graveled highway with reckless disregard to consequences, thereby losing control of the automobile and causing it to turn over, whereby Bisoni suffered a fractured skull, and as a direct result of the injuries so received died on the same day; that the death of Bisoni was directly caused by the gross and wanton negligence and careless act of the defendant, Clayton D. Carlson, previously alleged, and also by the gross and wanton negligence and careless acts of the defendant, Clayton D. Carlson, which were enumerated in separate paragraphs, substantially repeating what was previously alleged; that the Ford car in which Bisoni was riding and which was being driven by Clayton D. Carlson was the property of and belonged to the defendant, A. J. Carlson; that at the time Bisoni received the injuries which caused his death, and for a long time prior thereto, the exact time being unknown to plaintiff, Clayton D. Carlson was an incompetent, careless,

reckless automobile driver; and that he habitually drove an automobile at a high, dangerous and excesive rate of speed upon the highways of Kansas without regard to the safety of other users of the highway and the condition of the road traveled, and with utter disregard of the rights of other persons; that at the time Bisoni received his injuries which resulted in his death, and for a long time prior thereto, which length of time plaintiff was unable to state, Clayton D. Carlson had the general reputation in the community of his residence as being an incompetent, careless, reckless automobile driver, all of which the defendant, A. J. Carlson, knew or had reasonable cause to know, and the defendant, A. J. Carlson, negligently allowed and permitted Clayton D. Carlson to use, drive and operate the car on the highways of the state at the time of the injuries and death of Bisoni, and at that time Clayton D. Carlson was driving the automobile with the permission of the defendant, A. J. Carlson.

With respect to the liability of A. J. Carlson, counsel for appellant argue that the allegations of the petition are ample, if established, to hold him liable either under the rules of the common law, as announced in *Priestly v. Skourup,* 142 Kan. 127, 45 P. 2d 852, and also under our statute (G. S. 1949, 8-222). Counsel for appellees readily admit that were it not for our "guest" statute (G. S. 1949, 8-122b) the petition states a cause of action against A. J. Carlson, but contend that unless plaintiff, under the allegations of the petition, is entitled to recover against the defendant, Clayton D. Carlson, under the guest statute, that he is not entitled to recover from either of the defendants. In support of that argument counsel for the appellees cite a number of authorities, most of them being cases from jurisdictions other than our own. We have read all these authorities and many more and find that none of them is directly in point. Many of them involve some question of agency between the owner and the operator of the car, or turn upon the doctrine of *respondeat superior,* neither of which is applicable here; others turn upon common law liability of the owner, or upon statutes unlike ours. We think we must decide the case upon our own statutes.

The sections of our statute in question were enacted at the same session of our legislature. G. S. 1949, 8-122b is section 1 of chapter 81, Laws of 1931, and became effective May 28, 1931. G. S. 1949, 8-222 is section 22 of chapter 80, Laws of 1931, and became effective on June 30, 1931. Neither makes any specific reference to the other. The statute relied upon by appellant reads:

"Every owner of a motor vehicle causing or knowingly permitting a minor under the age of sixteen years to drive such vehicle upon a highway, and any person who gives or furnishes a motor vehicle to such minor, shall be jointly and severally liable with such minor for any damages caused by the negligence of such minor in driving such vehicle." (G. S. 1949, 8-222).

Statutes of this kind extend the common law rule of liability of the owner. They have been sustained as a valid exercise of the police power and have been applied in harmony with their terms to the facts alleged or established. (See 5 Am. Jur. 732 to 738.) Our statute was upheld and applied in *Shrout v. Rinker*, 148 Kan. 820, 84 P. 2d 974. The negligence of A. J. Carlson occurred when he permitted his son Clayton to use the car on the highways, although the amount of his liability would be measured by the extent of the damages resulting from the negligence of Clayton in driving the car. The statute as applied here makes A. J. Carlson and Clayton "jointly and severally liable" for such damages. In *Dickson v. Yates*, 194 Iowa 910, 917, 188 N. W. 948, it was held:

"The joint liability of wrongdoers in tort is a joint and several liability, but exists only where the wrong itself is joint."

In 62 C. J. 1130 begins a discussion of joint and several liability. Beginning at page 1132 it is said:

"Torts which are several, separate, and independent acts when committed do not become joint by the subsequent union or intermingling of their consequences where no concert of tortious action or consequence is intended by the parties or implied by law. . . ." (Citing many cases.)

See, also, 52 Am. Jur., Torts, § 112. Even there it is treated under general rules of law; here we have a statute fixing a severable liability. We think the word "severally" in the statute cannot be ignored.

Here the tort was not jointly committed. A. J. Carlson committed his wrong when he consented to Clayton D. Carlson driving the car, and Clayton D. Carlson having committed his wrong later when he was driving it. A. J. Carlson had previously made himself liable for any damages caused by Clayton's negligence.

G. S. 1949, 8-122b, relied upon by appellees, reads:

"That no person who is transported by the owner *or operator* of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner *or operator* for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle." (Our italics.)

Counsel for the appellant contend that the only "owner" men-

tioned in this statute is the one who *is transporting* a person who claims damages. That conclusion seems to be justified by the language of the statute, as seems clear by omitting the words we have italicised, "or operator," in the two places where they occur. In this interpretation the statutes are not conflicting. We think the result is that A. J. Carlson is liable under G. S. 1949, 8-222, and that G. S. 1949, 8-122b, does not limit that liability.

The next question to be considered is whether Clayton D. Carlson can be held liable in damages under the allegations of the petition. These must be compared with our statute above quoted (G. S. 1949, 8-122b). Since Allen Bisoni was being transported in a motor vehicle by Clayton D. Carlson as his guest, Clayton is liable only if the death of Bisoni resulted from the gross and wanton negligence of Clayton. How to compare the alleged acts of Clayton with the statute is well stated in *Bailey v. Resner* 168 Kan. 439, 214 P. 2d 323, where the pertinent syllabus reads:

"To state a cause of action under G. S. 1935 (1949), 8-122b, the petition must allege facts tending to show that the host's conscious conduct indicated a reckless disregard and complete indifference and unconcern for the probable consequences of his wrongful act, . . ."

And in the opinion (pp. 441, 442) it was said:

"By many previous decisions of this court the phrase 'gross and wanton negligence' has been held to mean 'wantonness' (citations). What is wantonness and how should it be defined? This court has defined it in nearly a score of cases since the enactment of the guest statute in 1931 (citations), and it may be said that the sum total of these definitions expounded in the past amounts to this—a wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It might be said to include a willful, purposeful, intentional act, but not necesarily so; it is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result."

And, quoting from *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 157 P. 2d 822, at page 666, it was said:

". . . to constitute wantonness the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. Stated in another way, if the actor has reason to believe his act may injure another, and does it being indifferent to whether or not it injures, he is guilty of wanton conduct."

This was quoted and followed in *In re Estate of Wright*, 170 Kan. 600-607, 228 P. 2d 911, as an appropriate test of what constitutes wantonness. (See, also, *Fyne v. Emmett*, 171 Kan. 383, 388, 233 P. 2d 496.)

Examining the petition in the light of the authorities just cited it is noted that in the petition it is alleged that the car was a 1933 Ford coach (fifteen years old at the time of the tragedy here involved), with defective steering apparatus and defective brakes; that the highway was of gravel construction with great amounts of loose gravel thereon; that Clayton D. Carlson drove the car at a high, dangerous and excessive rate of speed, in excess of fifty miles per hour; that Bisoni and other passengers in the car asked the driver to slow down and to drive carefully, and Bisoni told the driver to slow down so he could get out of the car or he would jump out; that Clayton D. Carlson ignored these requests and failed and refused to reduce the speed of the car and refused to allow Bisoni to get out of the car, and while traveling at the speed named Clayton D. Carlson caused the car to swerve from side to side of the highway, thereby losing control of the car and causing it to turn over, with the result that Bisoni was thrown from the car and killed. We are told the petition was not motioned, hence it must be construed favorably for the pleader, and for the purpose of the demurrer all of these allegations are admitted. We are unable to say as a matter of law that these allegations here admitted, if established by proof, would be insufficient to sustain a verdict for plaintiff against Clayton D. Carlson under our guest statute. It is well settled by the authorities that where a driver ignores appropriate and repeated admonitions to use care, the fact he does not do so may be considered in determining the state of mind of the driver in concluding whether his conduct was reckless. (See, *Titus v. Lonergan*, 322 Mich. 112, 33 N. W. 2d 685, where many cases are cited on this point.)

Finally, counsel for appellees argue that plaintiff cannot recover because of the contributory negligence of Bisoni. This point lacks substantial merit. At best it is a question for the jury.

For the reasons above stated it necessarily follows that the trial court erred in sustaining defendants' joint demurrer to plaintiff's amended petition. The judgment of the trial court is reversed with directions to overrule the demurrer.

THIELE, J., dissents from paragraph 2 of the syllabus.

WEDELL, J. (dissenting): I agree G. S. 1949, 8-222 and 8-122b, the latter being the guest statute, were enacted at the same time. This fact makes it all the more imperative that both statutes be construed together in order to ascertain the legislative intent with respect to the field in which each should operate. Manifestly it must be presumed the legislature intended each of these statutes should serve a particular purpose within its own field of operation. The first mentioned statute involves only liability of a parent for the minor's mere negligence. The other pertains to the liability of an owner-operator or some other operator of a vehicle where the host-guest relationship obtains. The instant petition was clearly framed on the basis of a guest relationship. It expressly alleged the guest was riding in the car driven by Clayton D. Carlson (the son) "with the permission of the defendant, A. J. Carlson."

It will be observed the guest statute makes no exception where the vehicle is being operated by a minor. In order for the guest to recover he must allege and prove gross and wanton negligence and that is required irrespective of whether the owner or his son operated the car. Of course, if this were the ordinary type of case in which the son, for example, had negligently struck a person on a highway or elsewhere the father clearly would be liable under the provisions of G. S. 1949, 8-222. That, however, is not this case. Here the pleader has expressly brought the case within the purview of the guest statute.

It is a rule of universal application which requires no citation of authorities that a special statute applicable to a particular situation governs those particular facts rather than a general statute. G. S. 1949, 8-222 does not make the remotest attempt to cover a host-guest relationship.

Our law expressly authorizes the granting of an operator's license to a minor under the age of sixteen who is at least fourteen years of age. (G. S. 1949, 8-237.) Such a license was also authorized under the former law. (G. S. 1935, 8-209.) The petition does not allege such a license had not been granted to the instant minor. It seems to me it is, therefore, inaccurate to say the father committed a wrong when he permitted the son to use the car.

I doubt it has ever occurred to a lawyer-parent that if he permitted his son or daughter, with an operator's license, to take a neighborhood child to school with him that he would be liable to such guest absent gross and wanton negligence on the part of the minor. Nor do I believe the legislature ever intended such lia-

bility should attach to the parent for the child's mere negligence under a host-guest relationship. As already stated the guest statute makes no exception when the operator is a minor and courts are without power or authority to read an exception into the statute.

The primary question, therefore, is whether this petition states a cause of action for gross and wanton negligence. Time prevents a review of our numerous cases on this subject nor do I deem that necessary. It will be sufficient to refer to the various cases collected under the guest statute. In my opinion they clearly disclose the instant petition does not state a cause of action under that statute. I direct particular attention to those cases in which the guest remonstrated against the driver's conduct. Surely merely remonstrances of a guest concerning the manner in which a vehicle is operated by the host and his failure to heed them are not sufficient alone to establish gross and wanton negligence. If this were not the rule it indeed would be easy for a free, gratuitous traveler to establish such negligence. Of course, reasonable remonstrances and the failure of the host to heed them constitute a *factor or element* which may be considered together with allegations of speed and other acts complained of in determining the state of mind of the host, but they cannot in themselves constitute sufficient allegations or proof of wantonness. (*Titus v. Lonergan,* 322 Mich. 112, 120, 33 N. W. 2d 685.) In that case it was held:

"The mere fact that a guest passenger warned the host motorist and expostulated with him concerning the manner in which latter was operating the car and that such warnings and expostulations were disregarded, is not sufficient to establish wilful and wanton misconduct under the guest passenger act. . . ." (Syl. ¶ 5.)

I have no trouble whatever in distinguishing the instant petition from the petition in the recent drunken driver case where the driver had completely lost control of the vehicle, was admonished by the guest, refused to heed the warning and, on the contrary, increased the speed of the car to its maximum capacity. In due deference to the views of the minority in that case I am convinced that petition stated a cause of action for gross and wanton negligence. (*Fyne v. Emmett,* 171 Kan. 383, 233 P. 2d 496.) A person who voluntarily becomes so intoxicated that he cannot control a car by his very act indicates a total disregard for the safety of others. In fact our law makes it a criminal offense for such a person to drive on the public highway.

Although the particular question presented here appears to be a

new one in this state it frequently has had the attention of able courts in other jurisdictions. In some of them no statute similar to our G. S. 1949, 8-222 exists but those courts have nevertheless held a parent liable for negligent acts of a minor in driving a vehicle with a parent's consent. Such states, however, as well as states having a statute similar to the one just mentioned, hold that the parent, under guest statutes, substantially the same or similar to our own, is liable only in the event the minor is guilty of gross and wanton negligence. Some of them are: *White v. Center,* 218 Ia. 1027, 1035-1037, 254 N. W. 90; *Bushie v. Johnson,* 296 Mich. 8, 295 N. W. 538; *Titus v. Lonergan,* 322 Mich. 112, 120, 33 N. W. 2d 685; *Tighe v. Diamond,* 149 Ohio St. 520, 526, 80 N. E. 2d 122; *Dyreson v. Sharp,* 333 Ill. App. 198, 76 N. E. 2d 809; *Randall et vir, Aplnts., v. Stager et al.,* 355 Pa. 352, 49 A. 2d 689; *Koger v. Hollahan,* 144 Fla. 779, 198 So. 685. See, also, 5 Am. Jur., Automobiles, § 363, p. 704, and *Vogrin v. Bigger,* 159 Kan. 271, 154 P. 2d 111, which is a guest case and is highly instructive on the question of gross and wanton negligence under an agency relationship.

Although in some of the cases last cited there is a slight difference in the exact wording of 'the statutes the substance of the question presented in the instant case is well treated and need not be repeated here.

Appellees further contend the petition discloses on its face the guest was guilty of contributory negligence in accepting an invitation to ride with the instant host and that the demurrer also was properly sustained on that ground. Our attention is directed to the admission in the petition that the driver "had the general reputation in the community of his residence of Morris County, Kansas, of being an incompetent, careless and reckless automobile driver." Appellees, therefore, argue the guest, notwithstanding such general reputation of the driver, accepted the invitation to ride with him. I shall not pursue appellees' contention on the subject of contributory negligence. In my opinion the petition did not allege gross and wanton negligence under our decisions. I am, therefore, of the opinion the district court properly sustained the demurrer.

PRICE, J., concurs in this dissent.