HARDY, Judge.
This is a suit by plaintiff, individually and on behalf of her three minor children, for .the recovery of damages resulting from the' death of her husband, allegedly caused by the negligence of defendant Wessel. Made parties are the liability insurers .of Wessel.
The accident which is the basis of the action occurred about 4:00 a. m. on March 1-2, 19S0, approximately 12 miles west of Junction City, Kansas. Defendant Wessel *819 was the driver of the automobile which crashed into the abutment of a bridge, fatally injurying the decedent • Barrell, and a companion, one Steve Ostrowsky.
An exception of no cause and no right of action was overruled and after trial on the merits there was judgment in favor of-defendants rejecting'plaintiff’s demands, from which plaintiff has appealed.
There is little dispute on the facts, which are almost entirely agreed. Defendant Wessel, accompanied by the decedent, Bar-rell, and two other companions, all being in the armed service, left their base at Ft. Riley, Kansas at about S :30 p. m. on March 11, 19S0 and proceeded, in the accomplishment of a joint venture, to the City of Sa-lina, Kansas where they occupied themselves with entertainment at a local night club. At about 1:00 or 2 :00 o’clock a. m. on the morning of March 12th the party, consisting of defendant and ■ two companions, Barrell and Ostrowsky, began their return to Ft. Riley. It is on the -question of time that the only conflict'of testimony develops. Defendant insists that the party left about 1:00 o’clock a. m., but plaintiff testified that she talked to her husband, the decedent, by long distance- telephone at about 2:00 a. m. We think the fixing of the exact time is immaterial. Some hour and a half after leaving Salina the defendant drove his car into the abutment of a highway bridge and his -two companions, both of whom were asleep at the time, were fatally injured.
Concededly the right of plaintiff to recovery in the instant case is governed and controlled by the law of the State of Kansas, particularly the statute G.S.1949, § 8-122b, which reads:
“Right of guest to collect damages from owner or operator. That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against * * * injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle.”
It is obvious that plaintiff’s rights must be determined by the construction of the statute cited. Accordingly we are here concerned only with an interpretation of the expression “gross and wanton negligence” under the undisputed facts of the case.
. The factual aspects which are urged in support of plaintiff’s rights are that the defendant Wessel had been without sleep for a period of some twenty-two hours at the time of the accident; that his two passengers fell asleep immediately upon beginning the return trip from Salina; that defendant had consumed one or two bottles of beer during the course of the evening, and that the use of the car heater with little, if any, ventilation was conducive to a feeling of drowsiness. On the basis of these facts it is urged that Wessel should have known that he was in danger of falling asleep. This development of cause and result leads, of course, to the conclusion that Wessel’s disregard of the existing conditions amounted to gross and wanton negligence within the contemplation of the statute. Counsel for plaintiff in support of this conclusion urges the following authorities:
“While a host who is involuntarily overcome by sleep is not guilty of wilful misconduct or of reckless operation of the automobile, so as to justify a recovery for injuries by a guest, a motorist who should realize that he is falling asleep, or may very likely be unable to stay awake, and yet continues at the wheel, may be found to be grossly negligent, guilty of reckless operation, or of willful misconduct.” Blashfield’s Cyclopedia of Automobile Law and Practice, § 2337.
“ Wantonness * * * “is the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure. * * * ” ’ The duty there referred to, the disregard of which amounts to wantonness is mani *820 festly that which arises only when the person charged with dereliction has knowledge of the danger, or of the facts which impute that knowledge to him.” Atchison, T. & S. F. Ry. Co. v. Baker, 79 Kan. 183, 98 P. 804, 806.
It is noted that the Baker case, from' which the last above quotation is taken, was decided in 1908, considerably more than twenty years prior to the adoption of the guest statute which is here under examination. Despite the persuasiveness of the argument we think it must yield to the apparently overwhelming weight of Kansas jurisprudence which leads to an opposite conclusion. The opinion in the comparatively recent case of Bailey v. Resner, 168 Kan. 439, 214 P.2d 323, 327, comprehends a careful and thorough analysis of the history of the Kansas guest statute, quoted supra, and the definition of the term “wantonness” in the light of the statute. The Bailey case involved a suit against the parents of a young man subject to periodic epileptic fits. Injuries resulted to guest passengers' when the youth suffered a seizure and lost control of his automobile. The court held that a demurrer to the petition was properly sustained inasmuch as the conduct of the driver under the circumstances failed to constitute “a reckless disregard and complete indifference and unconcern for the safety of the occupants”, and, at most, indicated only ordinary negligence for which there was no liability under the guest statute.
In the course of the opinion the court cited a number of Kansas cases dealing with the construction of the phrase “gross and wanton negligence”. An examination of these'cases convinces us that the Kansas courts have construed the phrase to comprehend willful conduct coupled with a realization of an imminent danger to another resulting from such conduct, together with an indifference to such injury. Srajer v. Schwartzman, 164 Kan. 241, 188 P. 971; Leabo v. Willett, 162 Kan. 236, 175 P.2d 109; Donelan v. Wright, 148 Kan. 287, 81 P.2d 50.
Although the strict construction of the statute evidenced by the cases cited may impress us as being harsh, we cannot say that it is in any degree unwarranted. The very definition of the word “wantonness” implies a .disregard of the rights of others. We can only consider that the use of the phraseology employed by the Kansas legislature indicated a clearly evidenced intent and purpose to restrict the recovery by guests to instances in which the .host was guilty of active negligence in such superlative degree as would barely fall short of a willful and purposeful intent to injure.
This court on one occasion interpreted a somewhat similar guest statute of the State of Arkansas in the case of Surgan v. Parker, La.App., 181 So. 86. The opinion adverted to a consideration of the terms “willful misconduct” and “wanton misconduct”, and the conclusion was reached therein that the terms were virtually synonymous in meaning and effect.
We find ourselves in thorough accord with the reasoning advanced by our learned brother of the district court in. his written opinion. For the- reasons assigned the judgment appealed from is affirmed at appellant’s cost.