## No. 38,973

JORDAN MacDOUGALL, A Minor, by Her Next Friend, Catherine M. MacDougall, *Appellee*, v. DR. DAMON O. WALTHALL, Administrator of the Estate of John Daniel Walthall, Deceased, *Appellant*.

FRED N. PIERSON, Administrator of the Estate of Natalie Pierson, Deceased, *Appellee*, v. DR. DAMON O. WALTHALL, Administrator of the Estate of John Daniel Walthall, Deceased, *Appellant*.

DON TAYLOR MARVIN, by His Next Friend, Mrs. Don A. Marvin, *Appellee*, v. DR. DAMON O. WALTHALL, Administrator of the Estate of John Daniel Walthall, Deceased, *Appellant*.

(257 P. 2d 1107)

Opinion filed June 6, 1953.

*William H. Curtis*, of Kansas City, Mo., argued the cause, and *Henry W. Buck*, of Kansas City, Mo., and *G. A. Roberds*, of Olathe, were with him on the briefs for the appellant.

*Charles F. Lamkin, Jr.*, of Kansas City, Mo., argued the cause, and *Howard E. Payne*, of Olathe, and *Bernard L. Trott*, *R. C. Tucker*, and *William H. Wilson*, all of Kansas City, Mo., were with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: These three consolidated actions are for damages. Plaintiff Fred N. Pierson, administrator of the estate of Natalie Pierson, deceased, is claiming damages for the wrongful death of Natalie Pierson, and plaintiffs Jordan MacDougall and Don Taylor Marvin, are claiming damages for personal injuries. Defendant is Dr. Damon O. Walthall, administrator of the estate of John Daniel Walthall, deceased. All the claims arise out of an automobile accident which occurred on the evening of December 30, 1950, while Natalie Pierson, Jordan MacDougall and Don Taylor Marvin were riding as guests in a car driven by John Daniel Walthall, now deceased, on Mission Drive in the city of Mission Hills.

Plaintiffs filed substantially similar petitions with the probate court which were subsequently certified to the district court for trial by jury. Pierson and Marvin filed amended petitions. Defendant demurred to the original petition of plaintiff MacDougall and the second amended petitions of plaintiffs Pierson and Marvin. Appeal was taken from the order of the trial court overruling the three respective demurrers.

The sole question before this court is whether appellees in their respective petitions have stated a cause of action upon which relief can be claimed under G. S. 1949, 8-122b, commonly known as the guest statute.

Inasmuch as it is agreed that the petitions of appellees are substantially identical insofar as pertinent hereto, we will treat the allegations hereinafter related as applicable to all appellees. We will refer to plaintiffs as appellees, and the defendant as appellant.

The allegations of appellees' petitions pertinent to the question involved herein may be summarized as follows:

On the night of December 30, 1950, at approximately ten to ten-thirty p. m., Natalie Pierson, Don Taylor Marvin and Jordan Mac-Dougall were guest passengers in a 1950 convertible Oldsmobile automobile driven and operated by John Daniel Walthall, on Mission Drive, a public street in the city of Mission Hills, for the purpose of going to the Kansas City Country Club situated at 62nd Street and Indian Lane in said city. Mission Drive was covered with an asphalt surface approximately twenty feet wide and winding in a southeasterly-northwesterly direction through a well-populated, urban residential area, with numerous winding streets intersecting it. Mission Drive north of its meeting with 61st Street

Terrace wound in a wide circle toward the west and sloped down-
grade to an intersection with Ensley Lane from the southeast and
with Overhill Road from the southwest (they too being public
streets in Mission Hills), and that from this intersection Mission
Drive curved approximately thirty-five degrees back to the north-
west. The intersection aforesaid and Mission Drive at all points
were practically flat between the curbs, and banked very little or
not at all. There were a great many trees, bushes, brush and
undergrowth to and about said intersection partially obscuring the
view along and around the various roads intersecting. Mission
Drive from said intersection and on the curve to the northwest was
closely bordered on the west side for several hundred yards by a
creek with steep banks and of considerable depth; that the driver,
Walthall, was an experienced automobile driver, residing in the
city of Mission Hills near the places mentioned, and was thoroughly
familiar with the streets, intersections, traffic conditions and the
entire area described. Mission Hills, at the time in question, had
in full force and effect an ordinance providing for speed restrictions
and which, among other things, provided: That no person shall
drive a vehicle on a street at a speed greater than is reasonable and
prudent under the conditions then existing; where no special hazard
exists, twenty-five miles per hour shall be lawful, but any speed in
excess of said limit shall be prima facie evidence that the speed is
not reasonable or prudent and that it is unlawful; that each driver
is under a duty to decrease the speed of his vehicle when approach-
ing and crossing an intersection, when approaching and going
around a curve, when traveling upon any narrow or winding street
or roadway, or when special hazards exist. As Walthall first ap-
proached the aforementioned intersection of Mission Drive, Ensley
Lane and Overhill Road and the curve of Mission Drive to the
northwest, someone in the car said another party had driven this
corner at eighty-five miles per hour, and Walthall thereupon stated
in substance, "I can do it too" and immediately thereafter and over
protests of his passengers aforesaid, accelerated his speed and
drove around said curve at a speed of forty to fifty miles per hour,
with the result that the passengers were thrown back and pinned
in their seats by the force of the acceleration and speed, and the
said automobile careened from one side of the roadway to the
other with a loud screeching of tires and with imminent peril of
leaving the road and crashing or turning over, all with knowledge
of said driver. Immediately after negotiating said curve, Walthall

accelerated the speed of his automobile, turned off of Mission Drive, which led directly to the Country Club, their original destination, and circled over other streets east and south a short distance and thence back onto Mission Drive so as to approach the curve of Mission Drive at the intersection aforesaid a second time and at a higher speed and from the same direction as he had previously driven. Walthall in spite of his experience on the same curve a few minutes previously, his experience as a driver and his familiarity with the neighborhood, and in spite of the continuous warnings and pleas, requests and remonstrances of his passengers who continuously, and in his hearing, implored and requested him to slow down, to drive carefully and not to try to take the curve at a high speed and to let them alight from the automobile, which they could not do at its then high speed, and in direct violation of the ordinance aforementioned of the city of Mission Hills, said Walthall did knowingly and with a reckless, gross and wanton negligence and total reckless disregard for the safety of his passengers and with complete indifference and unconcern for the probable consequences of his wrongful act, or for the safety of other persons, intentionally and deliberately accelerated the speed of said automobile to a speed greatly in excess of the speed at which he had driven into said curve a few minutes previously so that his speed the second time into the curve was above sixty miles per hour and approximately eighty miles per hour. Walthall by reason of his experience as a driver, his experience a few minutes before, his knowledge of the neighborhood and the conditions then and there existing, well knew that an attempt by him to negotiate said curve at such a speed would surely result in a wreck and injuries. As a direct result of the gross and wanton negligence and carelessness of said Walthall, the automobile left the roadway and crashed into trees standing on the east bank of the creek aforementioned, and with such force and violence that the said automobile was demolished, the driver, John Daniel Walthall, and Natalie Pierson suffered fatal injuries, Don Taylor Marvin was seriously injured, and Jordan MacDougall suffered multiple, critical and permanent injuries which are set forth in the petition in great detail.

An analysis of these petitions discloses a situation covered by our automobile guest statute, G. S. 1949, 8-122b, which so far as pertinent here provides that no person who is transported by the operator of a motor vehicle as his guest shall have a cause of action for damages against the operator for injury unless the injury shall have

resulted from the "gross and wanton negligence" of the operator of the vehicle. Since its enactment, many cases have arisen where the quoted words have been treated or defined. The rule to be used in determining whether the facts of a given case constitute "gross and wanton negligence" within the meaning of that term as used in the guest statute is no longer an open question in this jurisdiction. In *Bailey v. Resner*, 168 Kan. 439, at pages 441 and 442, 214 P. 2d 323, we held:

"By many previous decisions of this court the phrase 'gross and wanton negligence' has been held to mean 'wantonness' (. . .; *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 664, 157 P. 2d 822, and cases cited therein; . . .).

"What is wantonness and how should it be defined? This court has defined it in nearly a score of cases since the enactment of the guest statute in 1931 (citing many of our cases), and it may be said that the sum total of these definitions expounded in the past amounts to this—a wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It might be said to include a willful, purposeful, intentional act, but not necessarily so; it is sufficient if it indicates a reckless disregard to the rights of others with a total indifference to the consequences, althought a catastrophe might be the natural result.

"The term 'wantonness' or 'wanton conduct' has been defined by this court in cases other than those involving the guest statute (G. S. 1935, 8-122b), and it is difficult to find a more adequate definition of the term than is found in one such case—*Frazier v. Cities Service Oil Co.*, supra, at page 666:

" '. . . it may be concluded that as to injuries inflicted wanton conduct or wantonness comes between negligence on the one hand and willful or malicious misconduct on the other; that it is more than negligence and less than willfulness, and to constitute wantonness the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. Stated in another way, if the actor has reason to believe his act may injure another, and does it being indifferent to whether or not it injures, he is guilty of wanton conduct.' "

Our most recent cases are to the same effect. (*Hanson v. Swain*, 172 Kan. 105, 238 P. 2d 517; *In re Estate of Bisoni*, 171 Kan. 631, 237 P. 2d 404; *Fyne v. Emmett*, 171 Kan. 383, 233 P. 2d 496; *In re Estate of Wright*, 170 Kan. 600, 607, 228 P. 2d 911.)

Examining the petitions in the light of the authorities just cited, without segregating one allegation from the other, we are unable to say as a matter of law that these allegations here admitted, if estab-

lished by proof, would be insufficient to sustain a verdict for appellees against the appellant. Such allegations are sufficient to show that Walthall's conscious conduct indicated a reckless disregard and complete indifference and unconcern for the probable consequences of his wrongful action in racing his automobile upon the streets of the city of Mission Hills under the circumstances therein alleged. Therefore, they charged him with "gross and wanton negligence" within the meaning of that term as used in the guest statute. These allegations were sufficient to withstand a demurrer based upon the premise appellees' petitions failed to state a cause of action against him under the provisions of G. S. 1949, 8-122b.

It is well settled by the authorities that where a driver ignores appropriate and repeated admonitions to use care, the fact he does not do so may be considered in determining the state of mind of the driver in concluding whether his conduct was reckless. (*In re Estate of Bisoni,* supra, at page 636.)

For the reasons above stated, it necessarily follows that the judgment of the trial court is affirmed.