Jean Ann **BARTLETT**, a Minor, By Her Father and Next Friend, A. G. Bartlett, Appellant,

v.

James W. **GREEN**, Respondent.

No. 48448.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1961.

Ben W. Swofford, Laurence R. Smith, Swofford, Smith & Waisblum, Kansas City, Rucker, Tabor, Best, Sharp & Shepherd, Tulsa, Okl., for appellant.

William A. Rundle, Jr., Thomas D. Cochran, Morrison, Hecker, Buck & Cozad, Kansas City, for respondent.

WESTHUES, Presiding Judge.

This is an action for $75,000 damages for personal injuries alleged to have been sus-tained by plaintiff on Sunday, September 23, 1956, when a car driven by the defend-ant left the roadway on U. S. Highway 69 in the State of Kansas, a short distance south of Kansas City, Missouri. Plaintiff, a minor, two years and ten months old when she was injured, filed the suit by her father and next friend in Jackson County, Mis-souri. The cause of action was based on the theory that defendant was guilty of negligence in permitting the car to leave the travel portion of the road and strike an embankment. Plaintiff and defendant's wife were thrown from the car. We need not relate the injuries sustained because there was a verdict for the defendant. The case was submitted to a jury on the Kansas Guest Statute which statute does not permit a guest to recover unless the defendant was guilty of "gross and wanton negligence." Kansas G.S.1949, Sec. 8–122b; Perry v. Schmitt, 184 Kan. 758, 339 P.2d 36. Whether plaintiff was a guest within the meaning of the statute is one of the issues presented on this appeal.

As above indicated, a trial resulted in a verdict for the defendant. Plaintiff's mo-tion for a new trial was overruled and an appeal was taken from the judgment en-tered.

■ Before considering the merits of the case, we shall dispose of the defend-ant's suggestion, made in the brief, that this appeal should be dismissed for the rea-son that plaintiff has not made a sufficient statement of the grounds vesting this court with jurisdiction. On page 1 of plaintiff's brief, we find the following state-ments:

"This is a suit for Seventy-five Thousand ($75,000.00) Dollars in damages for per-sonal injuries received by the plaintiff in an automobile accident.

"It is an appeal from a judgment for defendant, following a jury verdict for de-fendant, entered in Division 13 of the Circuit Court of Jackson County, at Inde-

pendence. Plaintiff's Motion for a New Trial was overruled."

Defendant, in support of his suggestion to dismiss, cited the cases of Trokey v. United States Cartridge Co., Mo., 214 S.W.2d 526, l. c. 527(1); Jameson v. Fox, 364 Mo. 237, 260 S.W.2d 507, l. c. 508(1); and Langhammer v. City of Mexico, Missouri, Mo., 327 S.W.2d 831, l. c. 833(1, 2). Those cases do not support defendant's contention. Plaintiff's statement as to jurisdiction is the very kind that S.Ct. Rule 1.08[1] requires, that is, a statement of facts and not conclusions. In each of the cases cited, the statement as to jurisdiction was substantially to the effect that the amount in dispute "exceeds the sum of $7,500." Such statements are mere conclusions. But, to say this is an action for $75,000 and there was a judgment for the defendant and plaintiff has appealed are statements of facts, not conclusions. There is no merit in defendant's point.

Plaintiff briefed three points. In the first, it is stated that the trial court erred in refusing to admit evidence tending to show that plaintiff was not a mere guest, that is, the transportation of plaintiff was to promote mutual interest and that defendant was to derive some benefit therefrom. In points two and three, plaintiff complained of the giving of instructions No. 7 and No. 8 requested by defendant.

Defendant contends there were no errors as plaintiff claims and further that the trial court should have directed a verdict for him at the close of all of the evidence. This is on the theory that the evidence was insufficient to sustain a finding that defendant was guilty of gross and wanton negligence.

■ We shall deal first with the question of the sufficiency of the evidence. Plaintiff's father, A. G. Bartlett, and the defendant are brothers-in-law. Plaintiff's mother and defendant's wife are sisters. The Bartletts lived in Tulsa, Oklahoma, and the

Greens lived in Kansas City, Missouri. Mrs. Rexford Lane, living in Tulsa, and Mrs. John Meade, living in Oklahoma City, were also sisters of plaintiff's mother. Mrs. Daisy Johnston, a widow and the mother of the four women mentioned, lived in Tulsa. On Saturday, September 22, 1956, the day before the occurrence in question, Mrs. Johnston underwent surgery at a hospital in Tulsa. It was in evidence that the four women, Mrs. Johnston's daughters, were all in Tulsa on that day; that it was arranged that the daughters would take on nursing duties for their mother. Pursuant to that arrangement, plaintiff was to be taken by the Greens to their home in Kansas City so that Mrs. Bartlett would have more time to attend to the mother's care.

About noon of Sunday, September 23 (the exact time was in dispute), the Greens with plaintiff left Tulsa for Kansas City. Defendant was at the time driving a Cadillac car which had been driven about 4000 miles and was practically new and in good condition. On this trip, defendant's wife sat beside him in the front seat with plaintiff on her lap. Defendant drove from Tulsa to Picher over Highway 66 and from Picher north toward Kansas City over Highway 69. About a mile south of Stanley, Kansas, Highway 69, running due north and south, intersects an east-west gravel road known both as Black Post Road and as 159th Street. Defendant was driving north toward this intersection at about four o'clock on Highway 69. When he reached the crest of a hill, which was about 400 feet south of Black Post Road, he saw a pickup truck in the act of coming onto Highway 69 from the east from Black Post Road. The truck made a turn to the south on Highway 69. While the truck was thus being driven onto Highway 69, defendant traveling at a high speed attempted to slow down or stop his car and to manipulate it so as to avoid a collision. Defendant's car did not collide with the

---

1. Now Civil Rule 83.05, V.A.M.R.

truck but passed the truck on the west side of the pavement. It left the roadway, collided with an embankment, came back onto the roadway, and came to a stop at the center of the intersection. The truck, when defendant's car passed it, was on its right side of the road about 70 to 80 feet or so south of the center of the intersection. Defendant's wife and plaintiff were thrown from the car. The car itself was damaged in a manner so as to make it difficult to determine just what occurred. The door on the right side of this two-door car was practically torn from the car. Defendant testified that the car did not turn over. The truck driver testified that his truck was at a standstill on the west side of the road where defendant's car flipped over his truck, after it collided with the embankment, without touching the truck and rolled over several times. There was no evidence of any damage to the top of the car. Evidence concerning the manner in which defendant operated his car shows the following: Defendant had traveled this highway quite often and knew the condition of the road. The day was clear and the pavement was dry. The posted speed limit at the point in question was 60 miles per hour. Defendant testified he was driving at 70 m. p. h., and that he was fairly well acquainted with Highway 69. When asked if he was acquainted with the intersection of Highway 69 and Black Post Road, he answered, "No, there are too many intersections along 69 to be acquainted with them." A number of witnesses testified as to defendant's speed. One stated that he was driving north on Highway 69 at a speed of 60 m. p. h., a short distance south of Stanley, when defendant's car passed him at a high rate of speed. Another estimated the speed at 80 m. p. h., or more. Defendant admitted he passed two cars shortly before he reached the crest of the hill south of Black Post Road. A highway patrolman testified as to what he found at the scene of the accident as follows:

"Q. What was the first evidence or indication of the path you could trace?

A. The first evidence of the path of the vehicle, what we call skidmarks. These skidmarks proceeded north in the northbound lane and then veered over to the embankment on the west side of the highway and then the marks proceeded on over across the Black Post Road leading up to where this car came to rest.

"Q. Did you measure the distance from the point where those skidmarks first started over to the embankment where it hit? A. I did.

"Q. What did that measure? A. The skidmarks themselves measured from where they began to the embankment, 290 feet of skidmarks.

"Q. What was the distance from the point on the embankment on down to where the Cadillac ended up? A. After the car hit the embankment, it traveled 94 feet to where it came to rest.

"Q. That made a total of 384 feet that you could account for the distance, is that correct? A. Yes.

"Q. With reference to these skidmarks, I ask you to state, skidmarks shown on the highway, were they solid skidmarks or not? A. Yes, they were solid skidmarks."

The patrolman gave as his opinion that the car was traveling "in excess of, I would say, of 70 miles an hour, around 80 or 85."

In addition to the above evidence, it was shown that Highway 69 is a much traveled road. This casualty occurred with the weather good at about four o'clock on a Sunday afternoon. Taking all of those circumstances into consideration and the further fact that the evidence of what actually occurred showed that defendant saw the truck when 400 feet away and that he was unable to control his car to as to prevent a casualty, we must conclude that a jury could well find defendant was guilty of gross and wanton conduct or negligence.

The defendant, in his brief, says that "The only evidence of negligence on the part of the defendant James Green was that of excessive speed. However, speed alone is not enough to constitute gross and wanton negligence. In Hickert v. Wright, 182 Kan. 100, 319 P.2d 152, 157 (1957):" We have no fault to find with that statement. However, speed may constitute gross and wanton negligence depending upon the surrounding circumstances. A person driving at a speed of 70 m. p. h., on a busy city street, would most certainly be guilty of gross and wanton negligence. In the case before us, the defendant admitted that he was driving at 70 m. p. h. The evidence justified a finding that the speed was much greater. Defendant testified he was not acquainted with the intersection of Black Post Road and Highway 69 because there were too many intersections on that road for him to be acquainted with all of them. However, there was in plain view a sign informing defendant that he was approaching an intersection. Further, there were signs posted that the speed limit was 60 m. p. h. Then, too, there was traffic on the highway at the time. Defendant admitted he passed two cars shortly before he reached the crest of the hill. Note that in the case of Perry v. Schmitt, supra, where the question of gross and wanton negligence was in issue, a jury answered specific questions to the effect that: first, liquor and beer consumed by the defendant contributed to the accident; second, the proximate cause of the accident was high speed. The defendant in that case was alleged to have driven his car at 80 to 85 m. p. h. The court, in holding the evidence sufficient to submit the case to a jury, said (184 Kan. l. c. 763, 339 P.2d l. c. 40): "In a long line of cases we have held that gross and wanton negligence under the guest statute means wantonness. An act has been held sufficient to constitute wantonness if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result."

In the case before us, the defendant testified that he had control of his car at all times and, yet, because of the speed of his car, he was not able to avert a catastrophe even though he noted danger ahead at a distance of approximately 400 feet. We must rule that the evidence was ample to support a verdict for plaintiff.

■ Was the plaintiff a guest under the Kansas statute? In addition to the evidence with reference to the relationship of the parties, plaintiff offered to introduce the following evidence which the court excluded: that Mrs. Johnston, the grandmother of plaintiff, had no means of her own; that she would require constant nursing care during her stay in the hospital; that for the past ten years, the children had aided their mother in a financial way; that the Greens had taken income tax deductions for sums advanced to Mrs. Johnston; that the Greens took plaintiff to Kansas City so plaintiff's mother would have more time to devote to taking care of Mrs. Johnston; that Mrs. Green could take care of her household duties and plaintiff; that by that arrangement nursing expense would be saved. In Ehrsam v. Borgen, 185 Kan. 776, 347 P.2d 260, l. c. 264, the Kansas Supreme Court said: "In order to take a person riding in an automobile out of the guest status, it is not necessary that the compensation for the ride be a strict contractual consideration or that an enforceable contract relation relative to the ride should exist between the parties. Where the trip is not purely social, any substantial benefit to the owner or operator of the automobile is sufficient to take the case out of the statute." A reading of that case and other Kansas cases therein reviewed has convinced us that under the law of Kansas the proffered evidence should have been admitted.

■ Plaintiff urges that instruction No. 8, given at defendant's request, was erroneous. This was a burden-of-proof instruction which concluded as follows: "* * * unless you believe and find from

the evidence in the case that plaintiff has proven by a preponderance of the credible testimony that the defendant, James Green, was guilty of gross and wanton negligence as defined and submitted to you in the instructions of the Court, *and that such gross and wanton negligence was the direct and proximate cause of plaintiff's injuries, then your verdict must be for the defendant, James Green.*" (Emphasis supplied.) The defendant cited three cases in support of the instruction: Caldwell v. St. Louis Public Service Co., Mo., 275 S.W.2d 288; Fawkes v. National Refining Company, 341 Mo. 630, 108 S.W.2d 7; and Layton v. Palmer, Mo., 309 S.W.2d 561, 66 A.L.R.2d 1242. Oddly, the plaintiff cited the same cases in support of her contention that the instruction does not state the law correctly. We are of the opinion that the instruction should not have been given. It was defendant's contention at the trial that the truck driver was negligent and that such negligence was the cause of plaintiff's injuries. For sake of argument, let us assume that the truck driver was guilty of negligence. However, if the defendant was also negligent and if such negligence contributed to cause plaintiff's injuries, the defendant would be liable in damages and be sued alone therefor. 65 C.J.S. Negligence § 110c, p. 682; Byars v. St. Louis Public Service Co., 334 Mo. 278, 66 S.W.2d 894, 1. c. 900 (6, 7); Caldwell v. St. Louis Public Service Co., Mo., 275 S.W.2d 288, 1. c. 292, 293(3) (4, 5); Fawkes v. National Refining Company, 341 Mo. 630, 108 S.W.2d 7, 1. c. 11 (11–15).

■■ Instruction No. 7, complained of by plaintiff and given at defendant's request, purported to define the phrase "gross and wanton negligence." It is long and involved. It is repetitious and difficult to understand. Instructions defining words and phrases should be brief. On a retrial, the court should not give more than one instruction defining the phrase and it should be plain and concise. We call attention to one sentence in the instruction which we deem not to be in harmony with the Kansas case law. It required a finding by the jury that the defendant, to be found guilty of gross and wanton negligence, must have realized the imminence of injury to others. Note how that portion of the instruction reads: "* * * the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because he was indifferent to whether it occurred or not." The wording of the instruction seems to have been taken from the opinion in the case of Bailey v. Resner, 168 Kan. 439, 214 P.2d 323. The Supreme Court of Kansas, in Perry v. Schmitt, supra, 184 Kan. 1. c. 763, 764, 339 P.2d 1. c. 40, had before it an instruction which advised the jury that the defendant must have actually realized the imminence of danger of injury to permit a finding of gross and wanton negligence. The trial court had refused to give such an instruction. The court referred to the Bailey case, supra, and went on to say, "For our recent holding on this subject see Hickert v. Wright, 182 Kan. 100, 104, 105, 319 P.2d 152. Therefore, defendant's contention that the court erred in refusing to submit to the jury his requested special question as to whether he actually realized the imminence of danger of injury is without merit."

On a retrial, instruction No. 7, in its present form, should not be given.

For the errors indicated, the judgment is reversed and the cause remanded.

It is so ordered.

All concur.